565 F.2d 722
 184 U.S.App.D.C. 147
 Katie RELF, Individually and on Behalf of All Persons
Similarly Situated, et al.
v.
Caspar WEINBERGER, Individually and as Secretary of the
Department of Health, Education and Welfare, His
Agents, Successors and Assignors, et
al., Appellants.
NATIONAL WELFARE RIGHTS ORGANIZATION
v.
Caspar W. WEINBERGER, Secretary of Health, Education and
Welfare, et al., Appellants.
NATIONAL WELFARE RIGHTS ORGANIZATION, Appellant,
v.
Caspar W. WEINBERGER, Secretary of Health, Education and
Welfare, et al.
Katie RELF, Individually and on Behalf of All Persons
Similarly Situated, et al., Appellants,
v.
Caspar WEINBERGER, Individually and as Secretary of the
Department of Health, Education and Welfare, His
Agents, Successors, and Assignors, et al.
 Nos. 74-1797, 74-1798, 74-1802 and 76-1053.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 18, 1976.
Decided Sept. 13, 1977.
 
 Harry R. Silver, Atty., Dept. of Justice, Washington, D. C., with whom Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., and Robert E. Kopp, Atty., Dept. of Justice, Washington, D. C., were on the brief, for appellants in Nos. 74-1797 and 74-1798 and appellees in Nos. 74-1802 and 76-1053. Morton Hollander, Atty., Dept. of Justice and Thomas G. Corcoran, Jr., Asst. U. S. Atty., Washington, D. C., also entered appearances for appellants in Nos. 74-1797 and 74-1798 and appellees in Nos. 74-1802 and 76-1053.
 Leonard H. Becker, Washington, D. C., with whom Stuart J. Land, Michael N. Sohn, Jonathan D. Schiller, Lois J. Schiffer, and Charles R. Halpern, Washington, D. C., were on the brief, for appellant in No. 74-1802 and appellee in No. 74-1798.
 Pamela S. Horowitz, Montgomery, Ala., of the bar of the Supreme Court of Alabama, pro hoc vice by special leave of court, with whom Joseph J. Levin, Jr., Charles F. Abernathy, Montgomery, Ala., and Frederick D. Palmer, Washington, D. C., were on the brief, for appellants in No. 76-1053 and appellees in No. 74-1797.
 Lynn E. Cunningham and Florence Wagman Roisman, Washington, D. C., filed a brief on behalf of National Health Law Program as amicus curiae in Nos. 74-1797 and 76-1053 urging affirmance.
 Before DANAHER, Senior Circuit Judge, and McGOWAN and TAMM, Circuit Judges.
 Opinion PER CURIAM.
 
 PER CURIAM:
 
 1
 The appeals before us derive from proceedings in the District Court involving challenges to Department of Health, Education, and Welfare regulations covering sterilizations financed by HEW agencies in support of family planning services. By reason of representations made to us by HEW at the time the case was taken under submission, it is for decisional purposes in a somewhat unusual posture, posing a substantial question as to its current justiciability. How that has come about is apparent only from a recounting of the chronology of this litigation in some detail.
 
 
 2
 * One of the two complaints in the District Court was filed on July 31, 1973 (five individual women plaintiffs), and the other (National Welfare Rights Organization, plaintiff) on February 6, 1974. In the period between those two dates, HEW had no regulations relating to sterilization in effect, but it initiated and completed rule making proceedings under the Administrative Procedure Act resulting in regulations issued on the latter date. These regulations became the focus of attack in both complaints, it being asserted that they suffered from constitutional deficiencies as well as lack of statutory authorization. The merits of these claims came before the District Court on cross-motions for summary judgment. HEW having honored the Court's request that the effective date of the regulations be deferred until March 18, 1974, the Court issued its decision on March 15, 1974. Relf, et al. v. Weinberger, 372 F.Supp. 1196.
 
 
 3
 The District Court, consolidating the two actions for all purposes, declared that the relevant statutes do not authorize federal funding for the sterilization of any person who (1) has been judicially declared mentally incompetent, or (2) is in fact legally incompetent under the applicable state laws to give informed and binding consent to such an operation because of age or mental capacity; and it permanently enjoined HEW from providing federal funds for this purpose.
 
 
 4
 The Court next declared that the regulations in issue are "arbitrary and unreasonable" in authorizing the use of federal funds for sterilizing a legally competent person without requiring that he be advised prior to the solicitation or receipt of his consent that no benefits under any federally funded programs may be terminated or withheld by reason of his refusal to consent, and without requiring that such advice be prominently displayed at the top of the consent form; and the Court directed HEW promptly to amend its regulations to bring them into conformity with the Court's order.
 
 
 5
 HEW's first response to the Court's action was to issue, effective April 18, 1974, what it termed "interim regulations" relating to persons legally competent to consent to sterilizations. 39 Fed.Reg. 13872-73, 13887-88 (1974). These regulations not only complied with the Court's order but were accompanied by the continuation by HEW of a moratorium on federal funding of all non-emergency sterilizations of persons under 21 or mentally incompetent, thereby imposing greater restrictions on the use of federal funds for sterilization than those ordered by the Court. As will appear hereinafter, these are the regulations and the only regulations which have been in effect from that day to this, and are currently being observed by HEW.
 
 
 6
 HEW also, on May 13, 1974, appealed the District Court's order of March 15, as did both the Relf plaintiffs and NWRO. While these appeals were pending, HEW undertook to revise the regulations issued February 6, 1974; and, on July 24, 1974, revisions were approved by the Secretary, as was a further revision on September 3, 1974. Promulgation of the regulations as so altered was deferred pending resolution of the litigation. In a letter to the District Court dated January 3, 1975, signed by all of the parties to the appeals, it was stated that the regulations as revised were satisfactory to the parties, who sought, under the procedure prescribed by this court in Smith v. Pollin, 90 U.S.App.D.C. 178, 194 F.2d 349 (1952), "to propose modifications, consented to by all parties," to the final decree entered by the District Court on March 15, 1974. Appended to this letter was a copy of the revised regulations, as well as a suggested order modifying the Court's decree; and the parties requested an opportunity to appear before the Court in conference or hearing to accomplish the agreed accommodation of the law suit.
 
 
 7
 The District Court orally advised the parties that it would not consider the proposed modifications. Subsequently HEW moved this court in the pending appeal that the District Court's decree, modified to reflect the revised regulations, be summarily affirmed. The other parties to the appeal moved for summary affirmance without modification.[1] A motions division of this court on April 21, 1975, denied both motions without prejudice, and remanded the record to the District Court for consideration of the proposed modifications. In its remanding order, the court noted that, since the modifications would entail a reversal of part of the decree appealed from, it could not consider such a course in the absence of a statement of the Court's reasons for accepting or rejecting the proposed regulations.
 
 
 8
 On October 22, 1975, the District Court made its disposition of the remand. Relf, et al. v. Mathews, 403 F.Supp. 1235. It entered an order rejecting the proposed modifications as "inappropriate and not in the public interest" for the reasons set forth in its accompanying memorandum. In that memorandum, however, the Court characterized the modifications as having been first proposed to the Court of Appeals, and as designed to substitute a universal federal standard of voluntariness which, under various conditions and procedures, will permit federal funding of sterilization of persons 18 or over even when such persons are otherwise incompetent because of age or mental condition under state standards. The Court said that, when the case was before it earlier and prior to the entry of its March 15 order, HEW "never proposed a federal standard governing voluntariness." Because of the limited purposes of the remand and the retention of jurisdiction by this court, the District Court conceived that it had "no authority to do more than approve or disapprove the precise modifications proposed and cannot fashion alternative solutions." In rejecting the modifications, the Court noted, among other things, that
 
 
 9
 A regulation establishing a federal standard for voluntary sterilization should be considered through the rule-making process, after publication in the Federal Register, so that it will ultimately be fashioned with due regard for the views of the states and interested sectors of the community. The modifications proposed have not been subject to this process.
 
 
 10
 The Court concluded its discussion of the proposed modifications by asserting that "the present procedural difficulties can be surmounted only after the appeal has run its course;" and concluded by saying that
 
 
 11
 (I)n the event of affirmance there is nothing to prevent defendants' publishing proposed rules for establishing a workable federal standard. After an appropriate rule-making proceeding and decision, the Court could consider modifying its Order and would have the benefit of extensive data that would be generated in the rule-making proceeding reflecting experience under the Order as drawn.
 
 
 12
 On the day that these appeals were orally argued in this court, counsel for HEW delivered a letter to the Clerk, stating that he had been advised by HEW the preceding day that it "intends to institute rule making proceedings, under the Administrative Procedure Act, with regard to regulations governing the federal funding of family planning sterilizations. It is my understanding that proposed regulations will be published in the Federal Register, and interested persons will have the opportunity to submit comments." The letter went on to state that counsel had also been informed that "while the precise terms of the proposed regulations have not yet been finally determined, they will be similar to the terms of the proposed regulations set forth in the Appendix at 375-420."[2] Counsel's letter concluded by noting that the District Court's injunction was still before the court and that, "while it remains in effect, the Secretary may not promulgate any regulations that violate its terms." At the oral argument itself, counsel for the Government called the court's attention to this letter, and also represented that, until new regulations were promulgated at the conclusion of rule making proceedings, the interim regulations would continue in effect.
 
 
 13
 After the case was taken under submission, counsel for HEW, on February 1, 1977, wrote a further letter to the Clerk of this court stating that "the Secretary does not intend to institute rulemaking proceedings until these appeals have been decided. We believe it inadvisable to commence rulemaking proceedings while the extent of the Secretary's statutory authority is in doubt and while the Secretary remains under an injunction."
 
 II
 
 14
 The circumstances that now exist by reason of the foregoing seem to us to be as follows: The regulations promulgated February 6, 1974, after rule making, and which never became effective by reason of HEW's deference to the District Court's request, have been withdrawn by HEW. The same is true of the revisions of those regulations made without rule making, which were first tendered to the District Court by all parties as part of a settlement effort, and which were later presented to this court as the basis of a motion by HEW to affirm the District Court's decree with modifications.
 
 
 15
 The interim regulations are now in effect, as they have been since they were issued without rule making on April 18, 1974, and as they will be until new regulations are arrived at after rule making. Those regulations, as noted above, conform to the District Court's order of March 15, 1974, and indeed are more restrictive than that order requires.
 
 
 16
 In this state of affairs, appellant National Welfare Rights Organization asserts in its brief that because it "has no present objection to the District Court's March 15, 1974 order nor to its October 22, 1975 order following remand . . . NWRO's cross-appeal may be deemed withdrawn." The Relf appellants in their brief (filed before oral argument) continue to seek reversal of the District Court's order of March 15, 1974, insofar as it finds no statutory authority for federal funding of the sterilization of persons legally incompetent to give consent under applicable state laws because of age. They urge that a federal minimum age standard of 18 should be adopted; and that HEW should be required to develop stricter voluntariness safeguards for persons between 18 and 21 than for those over 21.
 
 
 17
 The HEW appellants profess agreement with the basic principle enunciated by the District Court that under the federal statute authorizing the use of federal funds for "voluntary" family planning, "federally assisted family planning sterilizations are permissible only with the voluntary, knowing and uncoerced consent of individuals competent to give such consent." They assert that voluntariness is to be determined by a federal standard and not solely by reference to state law; and that the Court erred in its insistence upon the latter.[3] They argue that the regulations promulgated on February 6, 1974 after rule making, as modified by the revisions approved by the Secretary on July 24 and September 3, 1974, constitute an allowable federal standard under the statute, and one which is reasonable in its terms.[4]
 
 
 18
 It is apparent that the contentions we are called upon to resolve relate to regulations, both as initially formulated and as proposed to be revised, which no longer have any official status.[5] They have never actually become effective, and HEW now has represented to this court that it has no purpose to make them so, even absent the compulsions of the District Court's injunction. It has signified, instead, that it intends to issue a new notice of rule making under the Administrative Procedure Act, at the conclusion of which it will promulgate comprehensive regulations for the federal funding of sterilizations. Until that event the interim regulations will continue to be followed.
 
 
 19
 The interim regulations have not been challenged as such, either in the District Court or here. Far from violating the District Court's injunction, they are more restrictive than the District Court required. The District Court itself, in its memorandum on remand, has disclaimed the absolute rejection by it of any federal standard of voluntariness, but rather has urged the utility of a new rule making proceeding in the formulation of a federal standard, in order that such a standard "will ultimately be fashioned with due regard for the views of the states and interested sectors of the community," a process to which, it was careful to remark, the modifications had not been subjected.[6]
 
 
 20
 In this state of affairs we think that this litigation is wanting in the vitality appropriate for resolution by us of the legal questions presented, or indeed necessitated by the constitutional demands of Article III. Accordingly, we find this controversy to have been mooted by HEW's withdrawal of its reliance upon and sponsorship of the product of the rule making proceeding resulting in the promulgation of regulations on February 6, 1974, and its declared purpose to initiate a new rule making leading to the promulgation of a new set of regulations.
 
 
 21
 The orders of the District Court before us for review are vacated, United States v. Munsingwear, Inc., 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), and the case is remanded to the District Court with directions to dismiss the complaints.
 
 
 22
 It is so ordered.
 
 
 
 [1]
 The difference in the respective motions for summary affirmance is due to the fact that plaintiffs appear to have become increasingly disaffected by reports that HEW was unable to supervise adequately the procurement of consents to sterilization, and that this raised questions not only as to HEW's enforcement of the interim regulations, but also as to its capacity to enforce the revised regulations
 
 
 [2]
 The regulations so referred to are the modified regulations as they were appended to the joint letter of the parties to the District Court on January 3, 1975
 
 
 [3]
 Where federal funds are authorized by Congress to be expended for sterilizations which are voluntary in nature, the question of what constitutes voluntariness in this context would appear to be one of federal law. In formulating standards for this purpose, it is surely true that state legal requirements cannot be controlling by their own force. A federal standard may still of course, to the extent the federal agency devising the standard finds wise or helpful, take note of state law and utilize available state legal mechanisms in designing and effectuating the federal standard. But how a federal statute is to be implemented remains a matter as to which federal law is supreme, and the agency charged by Congress with implementation is not bound to shape its concept of voluntariness to the contours of state law. See generally Planned Parenthood of Central Missouri v. Danforth, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976); Wyatt v. Aderholt, 368 F.Supp. 1383, 1384 (M.D.Ala.1974)
 
 
 [4]
 The HEW brief states that the revised regulations cannot be promulgated because they violate the District Court's order in two respects:
 
 
 [1]
 They permit federal funding of the sterilization of persons who are mentally incompetent under state law but who, under the procedural safeguards provided, are nevertheless capable of giving an informed and understanding consent
 
 
 [2]
 They permit federal funding of the sterilization of persons over the age of 18 in those states where by law they are still minors
 
 
 [5]
 The fact that HEW counsel's letter of November 18, 1976, to the Clerk of this court, advising of the new rule making, states that it is expected that the regulations to be proposed in the notice of that proceeding "will be similar" to the revised regulations before the District Court on remand, does not alter this conclusion. There remain substantial contingencies. One is counsel's further statement that the precise terms of the regulations to be proposed have not yet been finally determined. Another is that, even if proposed generally in the form intimated by counsel, they may emerge at the end of rule making, if at all, in a significantly changed condition. That is what the notice and comment features of APA rule making are all about
 
 
 [6]
 One of the concerns which the District Court had on remand with the revised regulations was that, in addition to failing to define with precision therapeutic and nontherapeutic abortions, the regulations were confined to the latter. This concern seems to us a legitimate one because it is unlikely that Congress conceived of its requirement of voluntary and informed consent as applying, except in emergency situations, to the one and not the other