MASSACHUSETTS HOSPITAL ASSOCI-
ATION, INC., on its own behalf and on
behalf of its Member Hospitals partici-
pating in the Medicaid Program, Plain-
tiff,

v.

Patricia R. HARRIS, as she is Secretary of
Health and Human Services, Common-
wealth of Massachusetts, Department of
Public Welfare, Alexander E. Sharp, II,
Individually and as he is Commissioner
of Public Welfare, David Pratt, as he is
successor in office to Alexander E.
Sharp, Rate Setting Commission, Ste-
phen M. Weiner, Individually and as he
is Chairman of the Rate Setting Com-
mission, and Shelby P. Mudarri, Individ-
ually and as he is Commissioner of the
Rate Setting Commission, Charles Sto-
ver, Individually and as he is Commis-
sioner of the Rate Setting Commission,
Peter Hiam, successor in office to Ste-
phen M. Weiner, Defendants.

Civ. A. No. 78–583–K.

United States District Court,
D. Massachusetts.

Oct. 29, 1980.

Edward D. Kalman, Kenneth A. Behar, O'Leary, Behar & Kalman, Boston, Mass., for plaintiff.

S. Stephen Rosenfeld, Carl Valvo, Asst. Attys. Gen., Boston, Mass., Donald Anderson, Asst. U.S. Atty., Nancy S. Nemon, Deputy Regional Atty., Dept. of Health & Human Services, Boston, Mass., for defendants.

1. Also, defendants Sharp and Weiner have moved to dismiss the complaint against them. *See* Part IV F.2, *infra.*

## MEMORANDUM AND ORDER

KEETON, District Judge.

### I.

### Introduction

The Massachusetts Hospital Association, Inc. (MHA), a nonprofit corporation of 151 member hospitals, has brought this action challenging Massachusetts' system for reimbursing hospitals for the costs of inpatient services provided to Medicaid patients. The Commonwealth's Medicaid cost reimbursement program is administered by the Department of Public Welfare (DPW) pursuant to rate setting regulations promulgated by the Rate Setting Commission (the Commission). The regulations are a component of Massachusetts' state plan for medical assistance (the state plan), and were approved by the Secretary of Health and Human Services (the Secretary) pursuant to Title XIX of the Social Security Act, 42 U.S.C. § 1396a(a)(13)(D). MHA claims that the state plan, on its face and as applied, violates the federal and state constitutions, Title XIX, the Secretary's regulations, and Massachusetts law. The Association also argues that the Secretary failed to conduct a proper prior–to–implementation review of the state plan now in effect, as well as of an earlier state plan, as required by § 1396a(a)(13)(D). Named as defendants are the Commonwealth of Massachusetts, the Commission, its chairman, members, and Stephen M. Weiner, its former chairman, the Department of Public Welfare, its Commissioner, and its former Commissioner, Alexander E. Sharp (all of whom are referred to collectively as the state defendants), and the Secretary of Health and Human Services.

The plaintiff has filed a motion for partial summary judgment, which is considered in Part II of this memorandum.

Both the state and federal defendants have filed motions to dismiss the amended complaint.[1] The issues raised by the mo-

tions to dismiss were divided into two categories for the purpose of oral argument. In the first category are the issues relating to the jurisdiction of this court to hear the claims and grant the relief requested by the plaintiff, *i. e.*, subject matter jurisdiction, standing, mootness, sovereign immunity, exhaustion of state remedies, and abstention as well as two issues relating strictly to the legal sufficiency of the complaint. These issues have been fully briefed and argued. They are discussed in Parts IV and V of this memorandum.

Issues in the second category raised by the defendants' motions to dismiss concern the proper scope of judicial review of the Secretary's approval of the state plan and the sufficiency of the plaintiff's allegations of constitutional and statutory violations. On March 4, 1980, the court entered a procedural order inviting the parties to submit memoranda on the question of the proper scope of judicial review. No oral argument on this issue has yet taken place. This memorandum does not decide issues in the second category. They are discussed in Part VI, *infra*.

## II.

### Plaintiff's Motion for Summary Judgment

■ Plaintiff's motion for partial summary judgment was filed on December 17, 1979. At the same time, pursuant to paragraph 2 of this court's Procedural Order Regarding Motions for Dismissal or Summary Judgment,[2] MHA filed a "Statement of Uncontroverted Facts" consisting of 260 paragraphs extending over 102 pages. Concerned about the length and complexity of the Association's submission, at a hearing on January 29, 1980 this court directed MHA to inform the clerk within one week whether its statement complied with the procedural order, and with supplemental directions given at the hearing, that only facts both undisputed and essential to its

summary judgment motion be set forth. On February 5, 1980, counsel for MHA wrote to the court stating that with respect to its motion for partial summary judgment against the state defendants

[T]he plaintiff is not prepared to say that all facts set forth in its Statement are "undisputed" within the meaning of the court's standard pretrial order, because in the context of that order plaintiff understands that the word "undisputed" means "uncontrovertible."

At a hearing on February 12, 1980 the court questioned counsel for the plaintiff about the meaning of the quoted portion of his letter. Referring to the state defendants' opposition to its summary judgment motion, plaintiff's counsel stated:

Now with that in mind I would like to differentiate between the defendants because I think it is important. As to the Secretary, I think our statement stands as uncontroverted.

Tr. of February 12, 1980 hearing, p. 25.

Later at that same hearing, the court ordered MHA to identify those facts in its Statement which related to its demand for judgment against the Secretary. Plaintiff did so in a statement filed February 19, 1980 that listed fifty-six purportedly undisputed facts. At a hearing on March 11, 1980, counsel for the Secretary sought relief from its obligation under paragraph 3 of the court's procedural order to respond to MHA's Statement of undisputed facts by underlining those facts which the Secretary asserted were genuinely in dispute. Tr. of March 11, 1980 hearing, pp. 45–50. Counsel for the Secretary called to the court's attention several allegations in MHA's Statement as to which the Secretary contended a genuine dispute clearly existed in the evidence. After an extensive discussion with plaintiff's counsel, the court granted the Secretary's request for relief from its proce-

2. Paragraph two of the procedural order requires

counsel moving . . . for summary judgment . . . [to] serve on opposing counsel (but not file with the clerk) . . . a Proposed Statement of Undisputed Facts and Conclusions of Law. The statement will list each finding and each

conclusion in a separate numbered paragraph. Counsel for the moving party is encouraged to be concise and to propose only the findings and conclusions that are essential to judgment under the legal theory or theories upon which the moving party relies.

dural order. *Id.* at 54. Implicit in its decision to do so was a determination that MHA had violated paragraph two of the procedural order by listing plainly disputable facts in its Statement.

Because the court's directions supplementing the procedural order required that only undisputed facts *essential* to the plaintiff's motion for summary judgment be included in its submission to the court, this court could deny plaintiff's motion for summary judgment simply on the basis of plaintiff's representation that *every* fact stated is essential and on its determination that some of the facts represented to be essential are in dispute. However, it is likely that counsel's representations arose from a misunderstanding of the court's procedural order and of the limited function of a trial court in considering a motion for summary judgment. When deciding such a motion, the court can neither weigh evidence nor make findings of fact on disputed issues. In these circumstances, it is more appropriate to strike plaintiff's motion for partial summary judgment without prejudice to its later filing a motion in compliance with procedural orders that have been or may be entered in relation to motions for summary judgment.[3]

### III.

#### The Statutory Context of This Controversy

A state electing to participate in the Medicaid program must submit a state plan to the Secretary of Health and Human Services describing how it will satisfy the conditions set forth in Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, and the Secretary's regulations. Section 1396a(a)(13)(D) of Title 42 requires that a state plan

> provide ... for payment of the reasonable cost of inpatient hospital services provided under the plan, as determined in accordance with methods and standards, consistent with Section 1320a–1 of this title [limiting the use of federal funds for

capital expenditures by hospitals] which shall be developed by the State and reviewed and approved by the Secretary and (after notice of approval of the Secretary) included in the plan, except that the reasonable cost of any such services as determined under such methods and standards shall not exceed the amount which would be determined under section 1395x(v) of this title as the reasonable cost of such services for purposes of subchapter XVIII [governing the Medicare program] of this chapter.

Before the passage of the Social Security Amendments Act of 1972 (the 1972 Act), Pub.L. 92–603, 86 Stat. 1410, the Secretary and the courts had interpreted Title XIX to require the states to reimburse hospitals participating in the Medicaid program in the same manner as had developed under the Medicare program, *i. e.,* by reimbursing the hospitals for the "costs actually incurred" in providing services. *See Massachusetts General Hospital v. Weiner,* 569 F.2d 1156, 1158 (1st Cir. 1978). This practice of fully reimbursing all expenses incurred by service providers provoked sharp criticism for doing nothing to hold down the spiraling costs of medical assistance programs. Staff of Senate Comm. on Finance, 91st Cong., 1st Sess., Report: Medicare and Medicaid: Problems, Issues and Alternatives 50 (Comm. Print 1970). Responding to this criticism, Congress enacted section 232 of the 1972 Act amending 42 U.S.C. § 1396a(a)(13)(D) to give the states authority, subject to the Secretary's approval, to implement their own methods of determining reasonable cost reimbursement rates so long as the rates did not exceed those determined under the Medicare reimbursement method.

In 1974, Massachusetts implemented a "prospective rate system" for inpatient Medicaid cost reimbursement that had been developed by the Rate Setting Commission and approved by the Secretary. A prospective rate system provides for the determina-

---

**3.** Although the court today strikes the plaintiff's motion for partial summary judgment, it has fully considered the arguments presented in the memorandum filed in support of the motion where relevant to the questions decided herein.

tion, before the commencement of the rate year, of an all–inclusive per diem rate for reimbursement for all Medicaid services furnished by a particular hospital. It is calculated by dividing a hospital's total reimbursable costs for a "base year," usually two years before the rate year, by the hospital's total number of base year inpatient days and adding an inflation factor to allow for certain increases in the cost of providing services over the two intervening years. Massachusetts' first prospective rate system was upheld in *Massachusetts General Hospital v. Weiner, supra,* in which the First Circuit affirmed the district court's findings that the Commonwealth's reimbursement system, as applied to the plaintiff, met the "reasonable cost" requirement of 42 U.S.C. § 1396a(a)(13)(D) and the Secretary's regulations, that the state plan satisfied the procedural requirements of the due process clause and Massachusetts law, and that the plan violated neither the impairment of contracts clause, art. I, § 10, cl. 1, nor the equal protection clause of the Constitution.

The state plan upheld in *Massachusetts General Hospital* remained in effect until January 1, 1978, when amendments proposed by the Rate Setting Commission and approved by the Secretary were implemented by the Department of Public Welfare. 114 CMR 3.00. MHA filed this action in March 1978 challenging the reimbursement rate methodology now in effect. It amended its complaint in March 1979 to add claims challenging the sufficiency of the Secretary's review of the state plan.

## IV.

### Procedural Issues

#### A. Jurisdiction

■ Because the amended complaint raises questions arising under the laws and Constitution of the United States, and more than $10,000 is in controversy, see amended complaint para. 42, this court has jurisdiction under 28 U.S.C. § 1331(a) and therefore it need not address defendant's arguments concerning plaintiff's assertion of jurisdic-

tion under 28 U.S.C. § 1343(3). *Massachusetts General Hospital v. Sargent,* 397 F.Supp. 1056, 1059 (D.Mass.1975).

#### B. Standing

■ Both the federal and state defendants question MHA's standing to challenge the legality of the Medicaid inpatient hospital rate reimbursement methodology as applied to each of its member hospitals. Portions of counts V through VIII, X and XI of plaintiff's amended complaint[4] assert claims that, as applied to each of its hospital members, Massachusetts' reimbursement regulations violate the Constitution, Title XIX, the Secretary's regulations and Massachusetts law by failing to reimburse them for costs reasonably incurred. Paragraphs 11, 12, and 14G of MHA's prayer for relief ask this court to order the DPW and the Commission to calculate for each of the Association's members the Medicaid costs for which each hospital was lawfully entitled to reimbursement, to declare that the hospitals are entitled to the amounts calculated, and to order the Secretary to withhold Medicaid funds from Massachusetts until the DPW pays each of MHA's members the amount to which they are entitled.

MHA asserts that it has standing to raise these as–applied claims both for itself and on behalf of its members. In support of its own standing the Association argues that it suffered two kinds of injury as a result of the defendants' actions. First, the Association claims it was denied the participation in the rate-making process guaranteed it by federal regulations and Mass.Gen. Laws ch. 6A, § 34. Second, through affidavits by its Controller and General Counsel, MHA alleges that because a hospital's membership dues are assessed on the basis of its expenditures and because those expenditures may be reduced as a result of regulations unlawfully limiting a hospital's Medicaid cost reimbursement, the Association suffered real economic injury. Although, as the state defendants concede, these inju-

---

4. Though counts I and IX purport to state "as–applied" claims as well, because they challenge the administrative review of the inpatient Med-

icaid rate methodology, no evidence of the application of the methodology to MHA's members is relevant to their determination.

ries are plainly sufficient to give MHA standing to challenge the procedures used to adopt and review the Medicaid reimbursement rate methodology and to mount a facial challenge of the regulations, *Hospital Ass'n of New York State, Inc. v. Toia*, 438 F.Supp. 866, 870 (S.D.N.Y.1977), they do not give MHA standing on its own behalf to challenge the legality of the regulations as applied to each of its 151 members.

In *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the Supreme Court recognized that:

> [A]n association may have standing in its own right to seek judicial relief from injury to itself and to vindicate *whatever rights and immunities the association may itself enjoy.*

*Id.* at 511, 95 S.Ct. at 2211 (emphasis supplied). MHA does not argue that its right to participate in the rate-making process extends to proceedings in which an individual hospital may challenge its reimbursement rate. Moreover, although the Association may be injured by reduced organizational revenues due to lower hospital expenditures induced by the allegedly unlawful reimbursement rates, its interest in those revenues is not a legally protected one. Any legal right that MHA might assert in its dues derives solely from its members' interest in being lawfully reimbursed for providing Medicaid services. Therefore, we must turn to the question of representational or associational standing.

In *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), the Supreme Court summarized its holdings on representational standing:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Id.* at 343, 97 S.Ct. at 2441. None of the defendants contests MHA's ability to satisfy the first two criteria set forth in *Hunt.*

However, before a claim of associational standing can be sustained, all three of the conditions stated in the Court's opinion must be satisfied. *Associated Gen. Contractors v. Otter Tail Power*, 611 F.2d 684, 690 (8th Cir. 1979). Both the federal and state defendants argue that MHA's as–applied claims and prayers for relief require the participation of its member hospitals.

In both *Warth* and *Hunt*, the Supreme Court examined the nature of the relief sought by the associational plaintiff and the type of proof required to establish its claims in determining whether the need for the participation of an association's members in the lawsuit precluded representational standing. In *Warth*, an association of home builders sought equitable relief and damages for its members for the reduction in business caused by the defendants' allegedly unlawful zoning practices. Finding that "whatever injury may have been suffered is peculiar to the individual member concerned, and [that] both the fact and extent of injury would require individualized proof," the Court held that each member of the association must be a party to the suit and denied the association standing to claim damages. *Warth v. Seldin, supra* 422 U.S. at 515–16, 95 S.Ct. at 2213–14.

In *Hunt*, the Court upheld the Washington State Apple Advertising Commission's standing to challenge a North Carolina statute prohibiting the display of Washington State apple grades, finding that "neither the ... [plaintiff's] claim nor the request for declaratory and injunctive relief requires individualized proof and both are thus properly resolved in a group context." *Hunt v. Washington State Apple Advertising Comm'n, supra* 432 U.S. at 344, 97 S.Ct. at 2442.

MHA reads *Warth* and *Hunt* as turning solely upon whether prospective injunctive relief or damages are sought. However, in deciding associational standing questions, other courts following the two opinions have properly performed a functional analysis of the kind of proof required to establish the claim or grant the relief at issue, rather than looking to a formal description

of the relief sought. *See, e. g., Boyce v. Rizzo*, 78 F.R.D. 698, 703–05 (E.D.Pa.1978).

In this case, in order to adjudicate MHA's as–applied claims, this court would need to make a hospital–by–hospital determination of the reasonableness of the reimbursement received by each of the Association's 151 members. *See Massachusetts General Hospital v. Weiner, supra* 569 F.2d at 1158–61. To enforce the relief requested, the court would be required, in the words of paragraph eleven of MHA's prayer for relief, "to calculate for [each of] MHA's member hospitals the difference between total Medicaid reimbursement received and the total amount each hospital would have received had Medicaid payments been made ... [as MHA contends they were required to be]." Plainly these determinations require the individualized proof of the claims of the Association's members that under *Warth* and *Hunt* prevent representational standing. Therefore, counts V–VIII, X and XI of plaintiff's amended complaint, insofar as they assert challenges to the Medicaid inpatient reimbursement rate methodology as applied to MHA's member hospitals, must be dismissed.

### C. The Eleventh Amendment Immunity From Suit

The state defendants have also moved to dismiss all claims against the Commonwealth, the Department of Public Welfare, and the Rate Setting Commission on the ground that the Eleventh Amendment denies this court jurisdiction. In addition, they and the federal defendants argue that the Amendment prevents this court from considering a number of MHA's prayers for declaratory and injunctive relief against the individual defendants.

### 1. Suits Directly Against a State or Its Agencies

▮ Although the Eleventh Amendment [5] does not expressly bar suits in federal court against a state by its own citizens, it has consistently been read to preclude such actions in the absence of a waiver of the state's immunity to suit. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Thus, this court is without jurisdiction to grant relief directly against the Commonwealth or its agencies unless the Commonwealth has consented to the filing of this action.[6] *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978).

MHA argues that Massachusetts has waived its Eleventh Amendment immunity through statutes permitting itself to be sued by Medicaid providers in state court and requiring its agencies to comply with Title XIX. In support of its contentions, the Association cites two statutory schemes providing for judicial review of actions taken by DPW and the Rate Setting Commission. The first statutory framework cited by the Association provides for judicial review of Medicaid reimbursement payments made by the Department of Public Welfare. Sections one, five and six of Mass.Gen. Laws ch. 118E establish the Commonwealth's Medicaid program and direct the DPW to provide for the furnishing of medical assistance in accordance with Title XIX and to reimburse the institutions supplying medical services. The Massachusetts courts have read the predecessor of Chapter 118E as allowing the Commonwealth to be sued in a state court by a provider seeking reimbursement for medical services furnished under the Medicaid program. *Massachusetts Gen. Hosp. v. Comm'r of Public Welfare*, 359 Mass. 206, 268 N.E.2d 654 (1971).

---

**5.** The Eleventh Amendment provides that:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend XI.

**6.** Although, as a condition for participation in the Medicaid program, Congress briefly required a state to consent to suits concerning the program in federal court, Pub.L. 94–182, § 111(a), it repealed the waiver provision in 1976. Pub.L. 94–552. *See Hospital Ass'n of New York State, Inc. v. Toia*, 577 F.2d 790 (2d Cir. 1978).

■ MHA argues that the Commonwealth's waiver of its sovereign immunity in its courts in suits against DPW should be interpreted as a consent to suit in the federal court. However, it is well settled that in the absence of a clear declaration of consent to suit in federal court, a state's consent to actions in its own courts will not be held to abrogate its Eleventh Amendment immunity. *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 465, 65 S.Ct. 347, 351, 89 L.Ed. 389 (1945); *Kennecott Copper Corp. v. State Tax Comm'n*, 327 U.S. 573, 577, 66 S.Ct. 745, 746, 90 L.Ed. 862 (1946). In the instant case, Mass.Gen. Laws ch. 258, § 12 provides that "[c]laims against the commonwealth, except as otherwise expressly provided in this chapter or by any general or special provision of law, may be enforced in *the superior court*" (emphasis added). The Association has not called the court's attention to any relevant exception to § 12. In the face of its clear statement directing claims to the Massachusetts superior court, we cannot find a consent to suit against DPW in federal court.

MHA also contends that Mass.Gen. Laws ch. 6A, § 32, which establishes the Rate Setting Commission, constitutes a waiver of the Commonwealth's Eleventh Amendment immunity. In relevant part, § 32 provides that:

> Each rate established by the commission shall be deemed a regulation and shall be reviewable as hereinafter provided. The commission shall promulgate rules and regulations for . . . the determination of rules as are herein required subject to the procedures prescribed by chapter thirty A. Every rate, classification and other regulation established by the Commission shall be consistent where applicable with the principles of reimbursement for provider costs in effect . . . under Title . . . XIX of the Social Security Act governing reimbursements . . . . (footnote omitted).

Citing *Florida Nursing Home Ass'n v. Page*, 616 F.2d 1355 (5th Cir. 1980), the Association argues that § 32 constitutes an independent commitment by Massachusetts to be bound by Title XIX, and that as such, it creates a cause of action for which the Commonwealth has consented to federal court jurisdiction. In *Page*, the Fifth Circuit construed a provision in a contract between a health care provider and a state Medicaid agency in which the parties agreed to abide by all federal laws applicable to the Title XIX Medicaid program as an express waiver of the state's Eleventh Amendment immunity. *Id.* at 1363. However, unlike the contract in *Page*, § 32 explicitly provides for judicial review of actions taken pursuant to its authority. The section directs that the Commission's rate determinations be deemed regulations "subject to the procedures prescribed by chapter thirty A." Mass.Gen. Laws ch. 30A, § 7 provides for judicial review of an agency's regulations by a declaratory judgment action brought in the superior court under Mass.Gen. Laws ch. 231. This method of reviewing Rate Service Commission rate determinations for compliance with Title XIX has been approved by the Massachusetts Supreme Judicial Court. *Massachusetts Gen. Hosp. v. Rate Setting Comm'n*, 359 Mass. 157, 269 N.E.2d 78, 81–82 (1971). *See also Murphy Nursing Home, Inc. v. Rate Setting Comm'n*, 364 Mass. 454, 305 N.E.2d 837 (1973). In light of the previously discussed rule against finding a waiver of a state's Eleventh Amendment immunity in the absence of an express manifestation of consent to suit in federal court, *Ford Motor Co. v. Dep't. of Treasury, supra*, this court reads § 32 as doing no more than creating a right of judicial review in the Massachusetts state courts of the compliance of the Commission's rate determinations with Title XIX and Massachusetts law. Therefore, the Commonwealth having given no consent to a suit of this kind in federal court, the plaintiff's claims against the Commonwealth, the Department of Public Welfare and the Massachusetts Rate Setting Commission must be dismissed.

2. The Court's Jurisdiction to Grant the Relief Requested

The state defendants argue that paragraphs 11, 12 and 14G of the plaintiff's prayer for relief constitute a request for retroactive monetary relief from the Com-

monwealth over which the Eleventh Amendment bars this court from taking jurisdiction. As briefly noted in part IV–B, *supra*, paragraph 11 seeks, *inter alia*, an injunction ordering DPW and the Rate Setting Commission to calculate for each of the last six years annual Medicaid payment rates for each of MHA's members at the level it contends Title XIX requires and to determine the amount by which each hospital was underpaid. Paragraph 12 requests that "in the event each of MHA's Member Hospitals has not within ninety days received payment in full of the amounts determined pursuant to prayer 11," the court order the Secretary to withhold all Medicaid payments from the Commonwealth while requiring it to fund fully its Medicaid program without reducing services to eligible patients. Finally, paragraph 14G seeks a declaration that "[e]ach of MHA's member hospitals is entitled to receive within ninety days the amount calculated pursuant to prayer eleven."

Although, as discussed above, the Eleventh Amendment bars a federal court from ordering any relief directly against a state or its agencies, it has long been held that a federal court may grant appropriate injunctive relief against a state official. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). However, "... when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Dep't of Treasury, supra* 323 U.S. at 464, 65 S.Ct. at 350.

■ A recently decided line of cases has made it clear that the determination whether a particular request for relief that will adversely affect a state's treasury is permissible under the Eleventh Amendment turns on whether the relief sought is prospective or retrospective, not on whether it is characterized as equitable relief or monetary damages. *Edelman v. Jordan, supra*, 415 U.S. at 667–69, 94 S.Ct. at 1357–58; *Quern v. Jordan*, 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). In *Edelman*, the Supreme Court held that an injunction

issued by the district court ordering Illinois officials to release and remit unlawfully withheld old age and disability benefits violated the Eleventh Amendment. In so doing, the Court rejected the respondent's contention that because the district court's order could be characterized as "equitable restitution" of benefits unlawfully withheld, it was permissible under *Ex parte Young*:

> We do not read *Ex parte Young* or subsequent holdings of this Court to indicate that any form of relief may be awarded against a state officer, no matter how closely it may in practice resemble a money judgment payable out of the state treasury, so long as the relief may be labeled equitable in nature.

*Edelman v. Jordan, supra* 415 U.S. at 666, 94 S.Ct. at 1357.

On remand, the district court ordered the state to notify each recipient of the amount he or she had been underpaid and to provide him or her with a notice of the availability of an administrative proceeding to recover the benefits. *Jordan v. Trainor*, 405 F.Supp. 802, 808–09 (N.D.Ill.1975). On appeal, the Seventh Circuit reversed that portion of the district court's order requiring the notice to contain a determination of the amount of benefits owed to each recipient. *Jordan v. Trainor*, 563 F.2d 873 (7th Cir. 1977) (en banc). In *Quern v. Jordan, supra*, the Supreme Court affirmed the Seventh Circuit's decision, and upheld the sending of a notice merely informing the recipient of the state procedures available for recovering benefits.

■ The Association argues here that because the relief requested is not an order directing the DPW to reimburse MHA's member hospitals for Medicaid services, the Eleventh Amendment does not prevent this court from considering it. However, *Edelman* and its progeny clearly prevent the federal courts from achieving through the artful use of injunctive relief the identical result obtained by a retroactive award of money damages. *See Jackson Sawmill Co. v. United States*, 580 F.2d 302, 309–10 (8th Cir. 1978), *cert. denied*, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979). In the

instant case, the only conduct that will satisfy the substantive objective of the requests for relief at issue is the payment by DPW of the amount purportedly owed to each of MHA's members. The Eleventh Amendment bars this court from ordering the DPW to do so directly, and it bars this court from ordering the Secretary to coerce the Department into doing so under threat of a complete denial of federal Medicaid funds. Therefore, the court is without jurisdiction to consider the prayers for relief stated in paragraphs 11, 12 and 14G. Moreover, for the reasons developed in Part IV–B, *supra*, MHA lacks standing to advance these prayers for relief on behalf of its members, and, for reasons developed in Part IV–D, *infra*, some of these prayers cannot be considered because of mootness.

### D. *Mootness*

■ In count III of its amended complaint, MHA alleges that the inpatient Medicaid rate methodology in effect from April 1974 through December 1977 was not properly reviewed by the Secretary before its implementation. Paragraph 14E of MHA's prayer for relief asks this court to issue a declaration to that effect. In addition, count IV and prayer for relief 14D state a claim and seek declarations that from April 1974 to the present the state defendants failed to reimburse MHA's members in accordance with Title XIX and that the Secretary failed to insure that the state defendants administered its Medicaid program as required by Title XIX. The state defendants move to dismiss all allegations relating to the Medicaid rate methodology in effect through December 1977 and relating to those reimbursement rates established pursuant to the current state plan that are no longer in effect, arguing that because the Eleventh Amendment bars this court from granting retroactive relief, the claims are moot.

In part IV–C of this memorandum, the court concluded that the Eleventh Amendment prevents it from directly or indirectly ordering DPW to reimburse MHA's member hospitals. Therefore, the mootness question turns on a determination whether a request for a declaration that regulations and rates no longer in effect were unlawfully formulated, reviewed and implemented has "the vitality appropriate for resolution . . . of the legal questions presented, or indeed necessitated by the constitutional demands of Article III." *Relf v. Weinberger*, 565 F.2d 722, 727 (D.C.Cir. 1977). Each of the Courts of Appeals that has addressed this question has found that jurisdiction is lacking where the administrative provision in question has no present impact. *Relf v. Weinberger, supra; Monell v. Dep't of Soc. Services of City of New York*, 532 F.2d 259, 261 (2d Cir. 1976), *rev'd on other grounds*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Gulf Oil Corp. v. Simon*, 502 F.2d 1154, 1156 (Em.App.1974). *Compare Mobil Oil Corp. v. FPC*, 469 F.2d 130, 137 & n. 5 (D.C.Cir. 1972), *cert. denied*, 412 U.S. 931, 93 S.Ct. 2748, 37 L.Ed.2d 159 (1973) (plaintiff's claim for relief not moot because court had jurisdiction to order the defendant to grant retrospective relief). However, courts have recognized that where the administrative determinations at issue are "short term orders, capable of repetition, yet evading review . . ." *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911), the mootness doctrine cannot be strictly applied to defeat the parties' right to judicial review. *See Big Rivers Electric Corp. v. EPA*, 523 F.2d 16, 19 (6th Cir. 1975), *cert. denied*, 425 U.S. 934, 96 S.Ct. 1663, 48 L.Ed.2d 175 (1976).

This case does not present a situation in which review of the administrative determinations will be hampered by applying the mootness doctrine. MHA's amended complaint states claims relating to the current inpatient Medicaid rate methodology and to current rates set pursuant to it. Therefore, this court lacks jurisdiction to consider the plaintiff's allegations concerning the inpatient rate methodology and reimbursement rates that are no longer in effect.[7]

---

7. In its motion for preliminary and/or permanent injunctive relief, the Association seeks an injunction patterned on the ones affirmed in *Quern v. Jordan, supra*, and *Grubb v. Sterrett*,

315 F.Supp. 990 (N.D.Ind.), aff'd, 400 U.S. 922, 91 S.Ct. 187, 27 L.Ed.2d 182 (1970), ordering the state defendants to give its members notice of the state administrative procedures available

### E. Res Judicata, Collateral Estoppel and Stare Decisis

The state defendants argue that portions of counts I, II, IV and V of MHA's amended complaint fail to state claims upon which relief can be granted because the claims and issues presented therein were already decided in *Massachusetts Gen. Hospital v. Weiner*, 569 F.2d 1156 (1st Cir. 1978), and *St. Elizabeth's Hosp. of Boston v. Weiner*, 577 F.2d 722 (1st Cir.), *cert. denied*, 439 U.S. 965, 99 S.Ct. 452, 58 L.Ed.2d 423 (1978),[8] and that therefore the doctrines of res judicata and collateral estoppel bar relitigation. Each of the counts is discussed in turn.

 For either res judicata or collateral estoppel to apply to bar litigation of a claim or issue in a subsequent case, three factors must be present: (1) An entry of a final judgment on the merits in the first action; (2) identity of the causes of action adjudicated (res judicata), or identity of the issues actually determined (collateral estoppel); and (3) identity or privity of parties in the two actions. *Walsh v. Int'l Longshoremen's Ass'n*, 630 F.2d 864 at 870 (1st Cir. 1980); *Black Voters v. McDonough*, 421 F.Supp. 165, 168 (D.Mass.1975), *aff'd*, 565 F.2d 1 (1st Cir. 1977).

 In count I, MHA alleges that section 222 of Pub.L. 92–603 precludes the Secretary from approving a state–wide prospective reimbursement system that is applied to the entire Massachusetts Medicaid program and that has not been submitted to a panel of health care experts for prior approval. Because count I contains allegations of fact concerning the approval of the state plan now in effect, it cannot be said to state a cause of action that could have been litigated when the previous state plan was challenged in *Massachusetts General Hospital*. *Walsh v. Int'l Longshoremen's Ass'n*, *supra* at 873, *Hadge v. Second Fed. Sav. & Loan Ass'n*, 409 F.2d 1254, 1256–57 (1st Cir. 1969). Therefore, res judicata does not bar consideration of count I.

However, the state defendants argue (and in part V, *infra*, the court concludes) that count I does not state a claim unless § 222 is the exclusive authority for the Secretary to approve a prospective reimbursement plan. For collateral estoppel to bar litigation as to whether § 222 is the exclusive authority, this issue must actually have been decided in the prior case.

In *Massachusetts General Hospital* the significance of section 222 was not raised either in the plaintiff's complaint or in the district court's order granting defendants' motions for summary judgment. Section 222 was first discussed in MGH's brief on appeal. In their answering brief, the state defendants–appellees noted that the issue had not been raised below. Brief for Appellee at 35, *Massachusetts General Hospital v. Weiner, supra*.

Although the Court of Appeals affirmed the District Court's decision finding that "a plan of prospective reimbursement for paying the cost of inpatient hospital services ... developed by the State of Massachusetts and approved by the Secretary meets the 'reasonable cost' requirement of 42 U.S.C. § 1396a(a)(13)(D), ..." 569 F.2d at 1157, it never discussed the possible impact of section 222. The state defendants argue that the Court of Appeals' holding–that the prospective reimbursement plan satisfied section 1396a(a)(13)(D)–necessarily implies a finding that section 222 does not apply to state plans. However, in light of the well–settled rule that "an issue not presented to the trial court cannot be raised for the first time on appeal," *Johnston v. Holiday Inns, Inc.*, 595 F.2d 890, 894 (1st Cir. 1979); *Roto–Lith, Ltd. v. F. P. Bartlett & Co.*, 297 F.2d 497 (1st Cir. 1962), and the prudent judicial policy "that '[r]easonable doubt as to what was decided by a prior judgment should be resolved against using it as an estoppel,'" *Mastracchio v. Ricci*, 498 F.2d 1257, 1261 (1st Cir. 1974), *cert. denied*, 420 U.S. 909, 95

---

to them. Although such an injunction has been found not to violate the Eleventh Amendment, it does not inject additional controversy into the case sufficient to justify jurisdiction where a plea for declaratory relief is insufficient.

8. Because the issues raised in two cases were essentially identical, and *St. Elizabeth's Hospital* was affirmed without opinion by the Court of Appeals, the two cases are referred to collectively as *Massachusetts General Hospital*.

S.Ct. 828, 42 L.Ed.2d 838 (1975), quoting *Kauffmann v. Moss*, 420 F.2d 1270, 1274 (3d Cir.), *cert. denied*, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970), the court will not apply the doctrine of collateral estoppel to bar MHA's section 222 claim.[9]

The state defendants argue that the portions of Counts III and IV challenging the Secretary's review of the old state plan ruled upon in *MGH* are barred by res judicata. However, because in Part IV–D, *supra*, the court today grants the state defendants' motion to dismiss the relevant portion of these claims on mootness grounds, there is no need to decide this question.

■ Finally, because Count V asserts only that the *current* state plan violates 42 U.S.C. § 1396a(a)(13)(D) and federal regulations by denying MHA's members reimbursement for the reasonable cost of medical services, neither res judicata nor collateral estoppel bars the claim. However, insofar as the plaintiff seeks to base its claim in Count V on the fact that the state plan may have the effect of "requiring non–Medicaid patients to pay for reasonable and necessary inpatient hospital services rendered to Medicaid patients," (Count V.d), the court notes that in *Massachusetts General Hospital* the Court of Appeals held that this result, without more, is insufficient to justify a finding that the plan violates 42 U.S.C. § 1396a(a)(13)(D) or the Constitution. *Id.* at 1158–59. Thus, for reasons of stare decisis, rather than res judicata or collateral estoppel, this court will apply the rule previously announced by the Court of Appeals for the First Circuit.

### F. Other Procedural Issues

#### 1. Rule 8

■ The state defendants have moved to dismiss the amended complaint for failure to comply with Rule 8 of the Federal Rules of Civil Procedure. Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(e) directs that each element in a pleading be "simple, concise and direct." Although the amended complaint contains seventy paragraphs of factual allegations and legal claims extending over thirty–five pages, it does give the defendants fair notice of the claims against them. *See Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The problem is that it does so at great length. The parties having argued the issues presented and the court having examined them, it would not now be useful to strike the complaint for failure to comply with Rule 8, even though it is most difficult to understand how it might fairly be regarded as one each element of which is "simple, concise and direct." Accordingly the motion to dismiss for failure to comply with Rule 8 will be denied.

#### 2. Exhaustion of Administrative Remedies and Abstention

Because the court grants the motion to dismiss MHA's "as applied" claims for want of standing, Part IV–B, *supra*, there is no need to address state defendants' argument that the Association's members must exhaust state administrative remedies before challenging the lawfulness of the Commonwealth's ratesetting methodology as applied to them. Similarly, because MHA's pendent claim (Count XI) that the current state plan violates Massachusetts law by subjecting its hospitals to rates which are not "fair, reasonable and adequate" as required by M.G.L. c. 6A, § 32 is read by the plaintiff as stating only an "as implemented" claim, *see* Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment 157, and this court has determined that MHA lacks standing to assert such a claim, Part IV–B, *supra*, the court need not decide whether to abstain on other grounds from determining the meaning of "fair, reasonable and adequate" under Massachusetts law.

#### 3. Rule 19

In light of the determination that MHA lacks standing to assert as–applied claims on behalf of its members, the state defendants' motion to dismiss the complaint for

---

**9.** *See* part V, *infra*.

failure to join the hospitals as parties will be denied.

### 4. Motion to Dismiss Sharp and Weiner as Defendants

 When this action was commenced in March 1978, defendant Sharp was Commissioner of Public Welfare and defendant Weiner was chairman of the Rate Setting Commission. Though they did not hold their respective official positions in March 1979, plaintiff nevertheless named them as defendants both individually and in their official capacities in its amended complaint. Neither Sharp nor Weiner now serves the Commonwealth in any relevant official position. Neither did so at the time the amended complaint was filed. Thus, it was improper to name them as defendants in their official capacity. *See* Adv.Comm. Note of 1969 to Subdivision (d) of Fed.R. Civ.P. 25.

Although Sharp and Weiner are also named as individual defendants, the amended complaint states no claim and no request for relief against either as an individual. Their motion to dismiss the amended complaint against them will be allowed.

### V.

### Section 222

 In count I of its amended complaint, MHA claims that the prospective reimbursement system adopted by the Rate Setting Commission and approved by the Secretary violates § 222(a) of the 1972 Act.[10] In relevant part § 222(a)(1) requires the Secretary

> directly, or through contracts with, or grants to public or private agencies or organizations . . . [to] develop and carry out experiments and demonstration projects to determine the relative advantages and disadvantages of various alternative methods of making payment on a prospective basis to hospitals . . . for care and services provided by them . . . under State plans approved under title XIX . . . including alternative methods . . . for establishing prospective rates of payment . . . in order to stimulate such providers

through positive (or negative) incentives to use their facilities and personnel more efficiently and thereby to reduce the total costs of the health programs involved without adversely affecting the quality of services . . .

Subsection (2) of § 222(a) instructs the Secretary that the experiments conducted under subsection (1) should not be so broad in scope as to commit the programs "to the adoption of any prospective system either locally or nationally." Subsection (3) provides that before authorizing any experiment, the Secretary must submit the proposal to a panel of medical specialists for their advice and recommendations and must furnish a report on the proposed demonstration to the House Ways and Means Committee and the Senate Finance Committee.

MHA alleges that § 222 is the exclusive statutory authority for federal approval of prospective reimbursement systems. Because the state Medicaid plan is prospective, has state-wide applicability and was not submitted to a panel of health care experts for prior study, MHA claims that it violates section 222(a). In response, the state and federal defendants argue that § 232 of the 1972 Act, which amended section 1902(a)(13)(D) of the Social Security Act, 42 U.S.C. § 1396a(a)(13)(D), grants a state discretion to develop a prospective reimbursement system so long as the state plan provides "for payment of the reasonable cost of inpatient hospital services" and receives the prior approval of the Secretary.

The legislative history unambiguously indicates that in enacting § 222(a), Congress intended to encourage the development of Medicaid hospital reimbursement systems that would provide incentives for minimizing costs without cutting back on the availability or quality of inpatient care. S.Rep.No. 92–1230, 92nd Cong., 2d Sess. 224–25 (1972) [hereinafter Senate Report]; H.R.Rep.No. 92–231, 92d Cong., 1st Sess., *reprinted in* [1972] U.S. Code Cong. & Ad. News, pp. 4989, 5066–69, 5290–91 [hereinafter House Report]. It directed the Secretary to engage in experiments with public

---

**10.** Section 222(a) is set out in the Historical Note following 42 U.S.C.A. § 1395f (1974).

and private agencies to test a variety of possible cost reimbursement systems. Nothing in the text of § 222 purports to limit the authority of states to engage in prospective Medicaid cost reimbursement systems with the Secretary's approval. In fact, the language in § 222(a)(5) directing the Secretary to report to the Congress by July 1, 1974 "on the experiments and demonstrations carried out under this subsection and *on the experience of other programs with respect to prospective reimbursement . . .*" (emphasis supplied) indicates a congressional intent that the states be permitted to experiment with prospective systems for Medicaid cost reimbursement. This inference is supported by the House Report on § 232:

> Your committee bill wishes to make clear that it is not the intention of this section to shift the burden of costs from Medicaid recipients to non–Medicaid recipients. However, the States should not be unduly restricted in the methods with which they might experiment for payment of inpatient hospital services.

House Report, *supra* at 5087.

The manifest congressional purpose in adopting section 232 was to amend 42 U.S.C. § 1396a(a)(13)(D) "... to allow States, generally, to develop their own methods and standards for reimbursement of the reasonable costs of inpatient hospital services, thereby giving them flexibility in working out payment arrangements with their hospitals." Senate Report, *supra* at 325; [11] House Report, *supra* at 5087; Conf. Rep.No. 92–1605, [1972] U.S. Code Cong. & Ad. News, p. 5386. As discussed above, the Court of Appeals for the First Circuit has held that a state–adopted prospective reimbursement system is permissible under section 1396a(a)(13)(D). *Massachusetts Gener-*

*al Hospital v. Weiner, supra* 569 F.2d at 1158.

In light of the absence of language in § 222 prohibiting the Secretary from approving state–adopted prospective reimbursement plans, the unambiguous Congressional intent to give the states flexibility in designing cost reimbursement systems, and the clear authority for construing section 1396a to allow prospective reimbursement systems, this court concludes that § 222 is not the exclusive statutory authority governing federal approval of prospective reimbursement systems.[12] Therefore the motion to dismiss Count I of plaintiff's amended complaint will be granted.

## VI.

### Obtaining a Prompt Resolution of the Remainder of the Case

In order to ensure that the remaining questions of fact and law raised by plaintiff's amended complaint and the motions to dismiss can be determined as expeditiously as possible, the court has scheduled a conference on Wednesday, January 14, 1981 at 3:00 p. m. At the conference, counsel for the parties should be prepared to address the following questions:

(1) What rules apply as to scope and standards of judicial review? Before addressing the remaining issues in the case, the court must first determine the proper scope of judicial review of the Secretary's approval of the state plan. On March 4, 1980, the court entered a Procedural Order directing the parties to submit statements of their positions on this question. Do the parties wish to file supplementary statements in light of this memorandum?

(2) The court is concerned that among the remaining questions in this action there

---

**11.** The Senate Committee on Finance deleted § 232 from the bill it reported to the Senate floor. The provision was adopted by the House and incorporated by the Conference Committee into the final legislation with the language requiring the Secretary's review and approval of a state's cost reimbursement methodology.

**12.** Significantly, unlike section 232 of the 1972 Act, 42 U.S.C. § 1396a(a)(13)(D), section 222(a)

did not amend Title XIX of the Social Security Act and was never codified in Title 42 United States Code. This omission, and the fact that all reports filed under section 222(a) were to be submitted during 1974, lend further weight to the argument that section 222 was not intended to limit the Secretary's ongoing authority under section 232 to approve prospective reimbursement systems.

may be some that require findings of fact from disputed evidence. If that is so, disposition of all issues in the case on motion to dismiss or on cross–motions for summary judgment is impossible. In order to avoid the added costs in time and resources of a piece–by–piece adjudication of this lawsuit, the parties are requested to consider in what manner the remainder of the case might be fully and expeditiously presented to the court for determination. The following alternatives, though not the exclusive ones, are set forth for discussion:

(a) That the court exercise its discretion under Fed.R.Civ.P. 12(d) to postpone consideration of the remaining issues raised by the motions to dismiss until discovery is completed and a trial is held.

(b) That after the close of discovery, the parties file cross–motions for summary judgment only if counsel can do so on the basis of plainly undisputed facts. Can the parties reach an agreement on a stipulated statement of facts for cross–motions for summary judgment? If this is not possible as to *all* issues, would it not be in the interest of all parties to proceed directly to trial?

(3) Should review be conducted in this case on a record that does not require this court to receive evidence and make fact findings? If, instead, this court should receive evidence at trial and make findings of fact, what are the issues of fact to be determined in this way? In the absence of identification of such issues, should this case be set for trial or otherwise submitted for determination without further discovery? If such issues are identified, how much discovery remains to be done?

Order accordingly.