RICHARD J. CUSACK *vs.* DIRECTOR OF THE DIVISION OF EMPLOYMENT SECURITY.

Essex. March 6, 1978. — July 25, 1978.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Employment Security*, Eligibility for benefits, Teacher. *Constitutional Law*, Equal protection of laws.

A tenured public school teacher who was under a contract of employment extending from September 1 to August 31 of the following year was not in "total unemployment" within the meaning of G. L. c. 151A, § 1 (r) (2), during the summer months. [98–99]

A tenured teacher under a contract of employment was not denied equal protection of the laws by the fact that he was not entitled to unemployment compensation under the provisions of G. L. c. 151A, § (1) (r) (2), during the summer months. [99–100]

CIVIL ACTION commenced in the District Court of Peabody on February 24, 1977.

The case was heard by *Tiffany*, J.

*Richard J. Cusack*, pro se.

*Frank J. Scharaffa*, Assistant Attorney General, for the defendant.

HENNESSEY, C.J. This is an appeal from a decision in the District Court of Peabody affirming a decision of the board of review of the Division of Employment Security (board) which found the plaintiff ineligible to receive

unemployment compensation during the months of July and August, 1975. This decision was based on the board's agreement with the review examiner's conclusion that the claimant, a tenured public school teacher, was not in "total unemployment" within the meaning of G. L. c. 151A, § 1 (r) (2), during the summer months. The claimant filed an appeal on May 2, 1977, from the District Court decision, and the presiding judge reported the case to this court as required by G. L. c. 151A, § 42. We conclude that there was no error in the proceedings below. Accordingly, we affirm the decision of the District Court.

There is substantial agreement as to the following facts.

The claimant, Richard J. Cusack, held two jobs during the 1974-1975 school year. He was both a tenured seventh grade teacher for the city of Salem and an employee of Eastern Racing Associates, working Saturdays, Sundays, and holidays as a ticket seller at the Suffolk Downs race track.

As a public school teacher, Cusack worked pursuant to an agreement between the school committee of Salem (school committee) and the Salem Teachers' Union, which agreement was in effect from September 1, 1974, to August 31, 1975. Under this agreement, teachers are hired to teach classes 180 days from early September to late June of the following year. They are paid an annual salary in twenty-six instalments on the Friday of every second week, but may elect to receive their July and August payments in a lump sum in June. This method of payment is consistent with G. L. c. 71, § 40, as amended through St. 1973, c. 52, § 15, which provides that "[t]he compensation paid to [public school] teachers shall be deemed to be fully earned at the end of the school year, and proportionately earned during the school year. Payment of such compensation may be deferred to the extent that equal payments may be established for a twelve month period including amounts payable in July and August subsequent to the end of the school year."

During the months of July and August, 1975, no races were scheduled at Suffolk Downs. Accordingly, Cusack stopped work as a ticket seller. He claimed unemployment benefits on July 7, 1975.

On June 28, 1976, the Division of Employment Security made an initial determination that due to Cusack's status as a tenured teacher under contract with the school committee he was not "unemployed" within the meaning of the Employment Security Act. In substance, this determination was adopted by the division's review examiner and board of review, and was accepted by the judge below.

1. Cusack points out that under G. L. c. 151A, § 1 (r) (2), as amended through St. 1951, c. 763, § 1, an individual is in "total unemployment in any week in which he performs no wage-earning services whatever, and for which he receives no remuneration, and in which, though capable of and available for work, he is unable to obtain any suitable work." Cusack argues that he meets this definition because (1) he performed no wage-earning services during the months of July and August under his contract with the school committee, and (2) he received remuneration only for services rendered through the end of June, and not for any services attributable to the summer months. We find these arguments unpersuasive.

It is well settled that the general purpose of the Employment Security Act is "to afford benefits to persons who are out of work and unable to secure work through no fault of their own." *Howard Bros. Mfg. Co.* v. *Director of the Div. of Employment Security,* 333 Mass. 244, 248 (1955). See *Kalen* v. *Director of the Div. of Employment Security,* 334 Mass. 503, 506 (1956); *Howes Bros. Co.* v. *Unemployment Compensation Comm'n,* 296 Mass. 275, 282 (1936). The granting of unemployment benefits, therefore, assumes some sort of severance of the employment relationship.[1] See, e.g., *Western Elec. Co.* v. *Director*

---

[1] One exception to this rule is provided in G. L. c. 151A, § 1 (r) (2). "An individual who is not entitled to vacation pay from his employer

*of the Div. of Employment Security,* 340 Mass. 190, 193 (1960). No such severance occurred here. The contract under which Cusack worked did not terminate in June, but remained in effect until August 31, 1975. Moreover, as a tenured teacher in the Salem public schools, Cusack not only had every expectation of returning to teach in September, see G. L. c. 71, § 41, but also had a legal interest in continued employment. See *Needleman* v. *Bohlen,* 386 F. Supp. 741 (D. Mass. 1974). In these circumstances, we conclude that the the judge was correct in sustaining the denial of unemployment benefits.

2. Cusack asserts that the division's denial of unemployment benefits on the ground that he is a tenured teacher violates his right to equal protection of the laws. There is no merit to this argument.[2] Cusack has intro-

---

shall be deemed to be in total unemployment during the entire period of any general closing of his employer's place of business for vacation purposes," and hence may be eligible for unemployment benefits, even though still under contract of employment. This provision addresses the situation of the relatively new employee who has not yet earned a vacation allowance, and who therefore would not be compensated, as are other more senior employees, during a general closing of business. See *General Elec. Co.* v. *Director of the Div. of Employment Security,* 349 Mass. 207 (1965). The provision does not apply to an employee like Cusack, who has suffered no comparable loss of wages during an otherwise compensable vacation period.

We note further that, even where severance of the employment relationship can be shown, unemployment compensation does not follow as a matter of course. For example, an employee otherwise eligible for compensation under G. L. c. 151A, § 1 (*r*) (2), will not receive benefits in those weeks where he or she has received either payments in lieu of a dismissal notice or accrued vacation allowance. G. L. c. 151A, § 1 (*r*) (3). See *Kalen* v. *Director of the Div. of Employment Security,* 334 Mass. 503 (1956); *Cerce* v. *Director of the Div. of Employment Security,* 333 Mass. 130 (1955).

[2] We point out that in November, 1977, the Legislature amended G. L. c. 151A, § 28A, in a manner specifically affecting teachers. General Laws c. 151A, § 28A (*b*), as appearing in St. 1977, c. 720, § 29, provides in pertinent part: "[B]enefits shall not be paid on the basis of ... [services performed in an instructional capacity for an educational institution] for any week commencing during a period between two successive academic years or terms if such individual performs such services in the first of such academic years or terms and there

duced no evidence whatever to show that the application of § 1 (r) (2) results in any invidious discrimination against teachers, in the sense that other types of employees similarly situated are treated differently. The record suggests that no other "discrimination" occurred here than a discrimination between employees who are still under contract of employment and those whose employment relationship has been severed. As we discussed, *supra,* this type of classification is rationally related to the purposes of the statutory program. As a result, we see no violation of Cusack's right to equal protection of the laws. See *Keough* v. *Director of the Div. of Employment Security,* 370 Mass. 1, 5-6 (1976).

*Decision of the District
Court affirmed.*

.

is a reasonable assurance that such individual will perform such services in the second of such academic years or terms."

This provision, enacted in 1977, has no effect on a determination of Cusack's eligibility for benefits in 1975. Neither is the statute crucial to our equal protection discussion, *supra.* Neither party invoked the amendment in oral argument or in the briefs submitted to this court. The claimant specifically limited his equal protection argument to the agency action which denied him compensation. Our inquiry is thus limited to the question whether the Employment Security Act as applied to the claimant violates his right to equal protection.