CYNTHIA LEBEAU vs. COMMISSIONER OF THE DEPARTMENT
OF EMPLOYMENT AND TRAINING.

Hampshire. January 11, 1996. - April 24, 1996.

Present: LIACOS, C.J., ABRAMS, LYNCH, O'CONNOR, & FRIED, JJ.

*Employment Security*, Eligibility for benefits, Availability for work, Judicial
review, Teacher, Voluntary unemployment.

Substantial evidence supported the determination of a hearing examiner of
the Department of Employment and Training that a teacher who
requested and received a year's leave of absence from her position was,
during that year, not involuntarily unemployed and was not "available
for work" within the meaning of G. L. c. 151A, § 1 (*r*), and that the
teacher was thus not entitled to unemployment benefits. [535-538]

CIVIL ACTION commenced in the Northampton Division of
the District Court Department on April 7, 1994.

The case was heard by *W. Michael Ryan, J.,* on a motion
for summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Ira Fader* for the plaintiff.

*Deborah I. Ecker,* Assistant Attorney General, for the de-
fendant.

*Robert J. Carey,* for the town of Easthampton, submitted a
brief.

ABRAMS, J. The plaintiff, Cynthia LeBeau, challenges a
District Court judgment affirming the decision of a hearing
examiner of the Department of Employment and Training
(DET). The hearing examiner denied LeBeau unemployment
compensation benefits. Pursuant to G. L. c. 151A, § 42 (1994
ed.), LeBeau appealed. We transferred the case on our own
motion. We affirm.

The relevant facts are not in dispute. Cynthia LeBeau was
employed by the town of Easthampton as a teacher from Feb-
ruary, 1976, until June, 1993. Her employment was governed

by a collective bargaining agreement. By letter dated June 1, 1993, LeBeau requested of her superintendent a one-year leave of absence for the 1993-1994 academic year. Her stated reason was the need to rest and reevaluate her teaching role.[1] On June 8, 1993, the superintendent informed LeBeau that her request had been granted by the school committee.

In August, 1993, LeBeau decided that she wanted to return to teaching. On August 28, 1993 (approximately one week before the start of the academic year), she submitted a written request to the school committee asking to rescind her leave of absence. In her letter, LeBeau said that she knew there was a posted but unfilled position in regular education and stated a strong desire to be placed in that position. She, however, expressed willingness to take whatever was offered, including her previous position, which remained unfilled.[2] LeBeau met with the school committee on August 30, 1993, to discuss her request. The next day, she was informed that her request to rescind her leave of absence was denied. The review examiner found that the reason for this denial was that "[t]he Easthampton School Committee did not want to set a precedent whereas a teacher could request a leave and ask that the leave be rescinded at any time. The [c]ommittee also considered the claimant's reasons for the leave that, she needed a rest to heal and some time and distance from her chosen career to step back and adjust her perspective on her profession." LeBeau did not grieve this decision because the applicable collective bargaining agreement expressly reserved to the school committee discretion in deciding whether to allow employees to return early from approved leaves of absence for finite periods of time.[3]

LeBeau commenced her leave of absence from the Easthampton school department in September, 1993. She extended

[1]The letter stated, in part: "I need a rest, to heal and some time and distance from my chosen career to step back and adjust my perspective on my profession. Reiteration of the cumulative stress of the recent years of my involuntary transfer is unnecessary."

[2]LeBeau contends that her change of heart was prompted by learning that her mother had terminal cancer and was not expected to live longer than a few weeks. This reason was not communicated to the school committee.

[3]The relevant portion of the collective bargaining agreement, art. 7, § 7.16, provided: "Whenever the Committee at an employee's request shall have granted a leave of absence to such employee for a specified period of

a part-time summer job until December, 1993, and accepted substitute teaching jobs in other school systems when work was available. When her part-time employment ended in December, 1993, LeBeau applied for unemployment benefits.[4] After initially allowing the claim, a review examiner reversed and found that LeBeau was not in total unemployment. The board of review (board) denied her application for review.[5] The plaintiff filed a timely appeal to the Northhampton District Court. In his opinion, the District Court judge determined "the only issue is whether the hearings officer made an error of law in determining that petitioner was not in total unemployment. No such error was made. [The p]etitioner voluntarily took a one-year leave of absence and by the terms of her contract was aware that an early return was dependent on employer discretion. Her change of mind does not alter her status. There was no error of law." We agree.

General Laws c. 151A, § 29 (*a*), provides that "[a]n individual in total unemployment and otherwise eligible for benefits . . . shall be paid for each week of unemployment . . . ." Section 1 (*r*) (2) provides that "an individual shall be deemed to be in total unemployment in any week in which he performs no wage-earning services whatever, and for which he receives no remuneration, and in which, though capable of and available for work, he is unable to obtain any suitable work." The review examiner concluded that in voluntarily taking a leave of absence, the plaintiff was not "available for work" at the Easthampton school department as that phrase is used to define "total unemployment" in G. L. c. 151A, § 1 (*r*), and therefore, was not entitled to benefits.

"Whether an employee is 'available for work' is primarily a question of fact that has been entrusted to the informed judgment of the [DET]." *President & Fellows of Harvard College* v. *Director of the Div. of Employment Sec.*, 376 Mass. 551, 555 (1978). The review examiner did not abuse his discretion

time the Committee shall not be obligated to return such employee to active service prior to the expiration of the full term of the leave granted."

[4]The claim was based solely on the plaintiff being unable to return early from her leave of absence. She has not filed a claim based on her severance of employment relations with the part-time employer.

[5]On denial by the board of the application for review, the review examiner's findings became the board's final decision. See G. L. c. 151A, § 41 (*c*) (1994 ed.).

in determining that LeBeau was unavailable to the school department. As the school committee, in allowing the plaintiff's request, could not require her to return to work during the year, it was proper for them to consider the plaintiff unavailable during the entire pendency of her leave of absence. A change of heart is not enough to change the plaintiff's status from a voluntary leave of absence to involuntarily unemployed and entitled to benefits.[6]

---

[6]Our conclusion is supported by analogy to cases that consider the effect on unemployment benefits of a voluntary resignation followed by an unsuccessful attempt to withdraw the resignation. See *Abramowitz* v. *Director of the Div. of Employment Sec.*, 390 Mass. 168 (1983) (this court upheld denial of unemployment benefits because plaintiff voluntarily resigned and caused his own unemployment). A majority of courts that have considered this issue are in accord. See, e.g., *Osterhout* v. *Everett*, 6 Ark. App. 216 (1982) (employee who voluntarily resigns employment without good cause connected with work not entitled to unemployment benefits if attempts to withdraw resignation prior to last day of employment); *Rabago* v. *Unemployment Ins. Appeals Bd.*, 84 Cal. App. 3d 200 (1978) (employer should not be burdened with proving facts necessary to establish reliance and prejudice in order to justify a refusal to permit withdrawal of a notice to quit); *Wright* v. *District of Columbia Dep't of Employment Servs.*, 560 A.2d 509 (D.C. 1989) (once employee voluntarily resigns job, employer's decision not to accept subsequent withdrawal of resignation does not transform employee's act into involuntary one); *Guy Gannett Publishing Co.* v. *Maine Employment Sec. Comm'n*, 317 A.2d 183 (Me. 1974) (voluntary resignation; no entitlement to benefits; immaterial that no replacement hired prior to attempt to withdraw resignation); *Schultz* v. *Oakland County*, 187 Mich. App. 96 (1991) (termination not involuntary because plaintiff denied opportunity to withdraw resignation; no right to withdraw resignation); *Nicholas* v. *Board of Review, Dep't of Labor & Indus.*, 171 N.J. Super. 36 (1979) (voluntary quit followed by decision to stay rejected by employer does not constitute discharge); *Whicker* v. *High Point Pub. Schs.*, 56 N.C. App. 253 (1982) (fact that plaintiff later wished to rescind resignation does not negate that it was voluntarily offered; no benefits). But see *Mauro* v. *Administrator, Unemployment Compensation Act*, 19 Conn. 362 (1954) (leaving not voluntary where plaintiff attempted to withdraw resignation prior to last day of employment; entitled to benefits); *Swanson* v. *State*, 114 Idaho 607 (1988) (where employee offered resignation in emotionally charged situation and sought to rescind two hours later, denial of benefits improper absent prejudice to employer); *Cotright* v. *Doyal*, 195 So. 2d 176 (La. Ct. App. 1967) (plaintiff who retracted notice of leaving and remained available to continue employment not voluntarily unemployed). Cf. *Stroh-Tillman* v. *Unemployment Compensation Bd. of Review*, 167 Pa. Commonwealth Ct. 154 (1994) (Pennsylvania law is that a resignation, later revoked, remains a voluntary termination of employment only if the employer has taken steps to replace the employee before the revocation).

In reaching its decision, the DET relied in part on the interpretation of c. 151A set out in its Service Representative Handbook § 1223 (A), which provides that "[a] claimant unable or unwilling to work because of medical or personal reasons, may request a leave of absence or accept a leave offered to him. During the leave, he is not in unemployment within the meaning of [§§] 29(a) and 1(r)." The DET argues that the interpretation in the handbook is dispositive of the question. As the agency charged with enforcing the unemployment compensation laws, we give substantial deference to the DET's interpretation. See *Massachusetts Medical Soc'y* v. *Commissioner of Ins.*, 402 Mass. 44, 62 (1988); *Cleary* v. *Cardullo's, Inc.*, 347 Mass. 337, 344 (1964) (Although "[t]he duty of statutory interpretation is for the courts . . . the details of legislative policy, not spelt out in the statute, may appropriately be determined, at least in the first instance, by an agency charged with administration of the statute"). The party appealing that interpretation has the burden of proving it invalid. *Almeida Bus Lines, Inc.* v. *Department of Pub. Utils.*, 348 Mass. 331, 342 (1965).

The plaintiff voluntarily requested a leave of absence for personal reasons. At the time of the request, she was aware that she would not be paid during her leave and would not be considered by DET to be in unemployment. Her action set in motion the chain of events which led to her being temporarily out of work for part of the 1993-1994 academic year. Cf. *Morillo* v. *Director of the Div. of Employment Sec.*, 394 Mass. 765, 766 (1985) (plaintiff entitled to benefits because "the first and last steps in the termination process . . . were taken by the employer"). The decision of the DET that she is, thus, not in total unemployment is supported by substantial evidence.

Were the plaintiff to recover benefits, the school committee might be forced to pay for a replacement and also to pay for LeBeau's unemployment benefits in the form of increased premiums. Such a result would be unfair. Cf. *Morillo* v. *Director of the Div. of Employment Sec.*, *supra* at 766 ("The employer is not penalized [by allowing claim for unemployment benefits] because his account will be charged regardless of the identity of employees who are laid off. This result is both equitable and realistic"). To allow the school department to be penalized by denying LeBeau's request to return

early also would defeat the intention in the collective bargaining agreement that the school committee retain discretion in deciding whether to allow an employee to return early from a leave of absence.

We add that the general purpose of the Employment Security Act is "to afford benefits to persons who are out of work and unable to secure work through no fault of their own." *Cusack* v. *Director of the Div. of Employment Sec.,* 376 Mass. 96, 98 (1978). "[T]he inquiry is not whether the employee would have preferred to work rather than become unemployed . . . but whether the employee brought his unemployment on himself." *Olmeda* v. *Director of the Div. of Employment Sec.,* 394 Mass. 1002, 1003 (1985), citing *Rivard* v. *Director of the Div. of Employment Sec.,* 387 Mass. 528, 528-529 (1982). See *Leone* v. *Director of the Div. of Employment Sec.,* 397 Mass. 728, 733 (1986) ("Where the employee has brought unemployment on herself without good cause, there is no entitlement to unemployment benefits"). Here, the plaintiff brought her temporary absence from employment on herself. In such circumstances, the plaintiff is not involuntarily unemployed during the period of the leave of absence. During her leave of absence, LeBeau remained an employee of the Easthampton school department and entertained every expectation that she would return to work at the expiration of her leave. Cf. *Cusack* v. *Director of the Div. of Employment Sec., supra* (teacher with expectation of returning to work and legal interest in continued employment not "unemployed" during summer months). LeBeau was not unemployed and, therefore, was not entitled to benefits. We affirm the judgment of the District Court judge upholding the decision of the board of review of the Department of Employment and Training.

*Judgment affirmed.*