KRISTEN CONNOLLY *vs.* DIRECTOR OF THE DIVISION OF
UNEMPLOYMENT ASSISTANCE & another.[1]

Essex. May 2, 2011. - June 16, 2011.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.

*Employment Security,* Eligibility for benefits, Voluntary unemployment.

Discussion of disqualification from receiving unemployment benefits for employees who leave work voluntarily, pursuant to G. L. c. 151A, § 25 (*e*) (1). [25]

The board of review of the division of unemployment assistance correctly concluded that the claimant, who accepted an incentive-based voluntary termination package offered by the defendant employer, should be denied unemployment benefits, where the claimant failed to establish by substantial and credible evidence that she had good cause for leaving attributable to the employer, in that she did not dispute the board's findings that, at the time she applied for the voluntary termination package, she was not compelled to apply, did not believe her job was in jeopardy, and left in part for personal reasons. [26-29]

CIVIL ACTION commenced in the Newburyport Division of the District Court Department on January 7, 2010.

The case was heard by *Peter F. Doyle,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Sheila C. Casey* (*James Breslauer* with her) for the plaintiff.

*John P. McLafferty* (*Claudia T. Centomini* with him) for Verizon New England, Inc.

*John Pagliaro & Martin J. Newhouse,* for New England Legal Foundation & another, amici curiae, submitted a brief.

IRELAND, C.J. We granted the plaintiff claimant's application for direct appellate review to determine whether the board of review of the division of unemployment assistance (board) erred when it concluded that the claimant should be denied unemployment benefits because she accepted an incentive-based

[1]Verizon New England, Inc.

voluntary termination package offered by her employer, the defendant Verizon New England, Inc. (Verizon). G. L. c. 151A, § 25 (*e*) (1). The claimant appealed to the District Court where a judge affirmed the decision of the board. She timely appealed and argues that the board made a legal error because, under this court's holding in *Morillo* v. *Director of the Div. of Employment Sec.*, 394 Mass. 765 (1985) (*Morillo*), Verizon took the "last step" in the termination process that entitled her to unemployment benefits. Because we agree with the board's conclusion that the claimant did not meet her burden of showing that her decision to leave was involuntary where she was not compelled to apply for the termination, did not believe her job was in jeopardy, and left in part for personal reasons, we affirm the District Court judge's decision.

*General Laws c. 151A, § 25 (e) (1).* The general purpose of the unemployment statute is to "afford benefits to [individuals] who are out of work and unable to secure work through no fault of their own." *LeBeau* v. *Commissioner of the Dep't of Employment & Training*, 422 Mass. 533, 538 (1996), quoting *Cusack* v. *Director of the Div. of Employment Sec.*, 376 Mass. 96, 98 (1978). We interpret the unemployment statute liberally to achieve its purpose "to lighten the burden . . . on the unemployed worker and his family." *Morillo, supra* at 766, quoting G. L. c. 151A, § 74. However, under G. L. c. 151A, § 25 (*e*) (1), an employee who leaves her job voluntarily is disqualified unless she can prove by substantial and credible evidence that she had "good cause for leaving attributable to the employ[er]."[2] See *Leone* v. *Director of the Div. of Employment Sec.*, 397 Mass. 728, 733 (1986). This court has held that a resignation that might otherwise appear voluntary will be deemed involuntary if the employee reasonably believed that his discharge was imminent. *White* v. *Director of the Div. of Employment Sec.*, 382 Mass. 596, 598-599 (1981) (*White*).

*Facts and background.* We set forth the undisputed facts as found by the review examiner and adopted by the board.

---

[2] General Laws c. 151A, § 25 (*e*) (1), states, in relevant part, that a person is disqualified from receiving unemployment benefits if "the individual has left work . . . voluntarily unless the employee establishes by substantial and credible evidence that he had good cause for leaving attributable to the employing unit or its agent."

The claimant was a customer service representative for Verizon at its facility in Lowell and a union member. In 2008, the claimant's department was going to be absorbing more employees from a different customer service group in the Lowell facility; that group had a surplus of employees. Consequently, Verizon offered union employees an opportunity to participate in a voluntary separation agreement that provided them with certain benefits in exchange for their termination.[3] The claimant applied for and accepted the voluntary separation package. At the time, the claimant was not compelled to apply, nor did she believe that her job was in jeopardy, nor was there a surplus of employees in her department. The claimant's decision to accept the package was influenced by her dislike of the job, the length of her commute, and a concern that she would be transferred to the Verizon facility in Andover.[4] There were no layoffs in her department after the claimant left Verizon.

The claimant applied for unemployment benefits and her application was approved. Verizon appealed. After a hearing on the merits, the review examiner denied the claimant's application for benefits. The review examiner concluded that the claimant left work without good cause attributable to Verizon because she did not prove that she had a reasonable belief that her job was in jeopardy because of pending layoffs or work performance. The claimant appealed to the board and it ultimately affirmed the decision of the review examiner. Relying on *State St. Bank & Trust Co.* v. *Deputy Director of the Div. of Employment & Training*, 66 Mass. App. Ct. 1 (2006) (*State St.*), the board concluded that, because the claimant did not have a reasonable belief that her job was in jeopardy at the time she accepted Verizon's separation agreement, as a matter of law, she left work without good cause attributable to the employer. She appealed.

*Discussion.* In reviewing a decision of the board concerning an individual's entitlement to benefits, we determine whether it "contains sufficient findings [and] whether those findings are

---

[3]The record shows that, among other benefits, the employee would receive a $10,000 voluntary termination bonus.

[4]The claimant testified that no one at Verizon suggested that she would be transferred and the commute to the Andover facility would be about the same for her as the commute to Lowell.

supported by substantial evidence." *Guarino* v. *Director of the Div. of Employment Sec.*, 393 Mass. 89, 92 (1984). Agency determinations of law are subject to de novo review. *Raytheon Co.* v. *Director of the Div. of Employment Sec.*, 364 Mass. 593, 595 (1974).

The claimant argues that the board erred as a matter of law in relying on *State St.* to determine whether she voluntarily left her job at Verizon. She asserts that the decision in *State St.* relied incorrectly on this court's holding in *White, supra*. She claims that the *Morillo* case should control because Verizon initiated a workforce reduction and took the final step in the process by terminating her, making her termination involuntary within the meaning of the statute. We disagree.

In *White, supra* at 597, the claimant accepted his employer's early retirement incentive offer of $3,000. There was evidence that White had heard a rumor that there was an impending lay-off if the work force was not reduced by early retirement. *Id.* "He thought he would be the second person laid off, based on seniority, and that close to forty people would have to go." *Id.* at 598. However, it turned out that White would not have been laid off, had he chosen to stay. *Id.* at 597. The court directed the case be remanded to the board for further findings as to whether White reasonably believed that a layoff was imminent when he retired and, if so, "a finding was required that the claimant did not leave his employment voluntarily." *Id.* at 598-599.

In *Morillo*, an employer announced that it was going to lay off twelve people. Morillo volunteered to be among that number because he was "dissatisfied with the safety of the machines" he operated. *Morillo, supra* at 765-766. He was denied unemployment benefits on the ground that he left work "voluntarily without good cause attributable" to his employer. *Id.* at 766, quoting G. L. c. 151A, § 25 (*e*) (1). The court disagreed, stating that "the first and last steps in the termination process in this case were by the employer"; that the purpose of the unemployment statute was to permit employees to offer to be among those laid off; and that the employer would not be penalized because its "account will be charged regardless of the identity of the employees who are laid off." *Id.* at 766.

In *State St.*, the employer announced that there was going to

be a workforce reduction of 1,800 employees in two phases. *State St.*, *supra* at 3. The first phase was a voluntary separation package; the second was involuntary termination. Because the number of employees offering to accept the voluntary separation exceeded 1,800, the second phase was never implemented. *Id.* at 4.

The Appeals Court considered and rejected an argument similar to the one the claimant asserts here: that *Morillo* stands for the proposition that any employee who leaves voluntarily after an employer announces a workforce reduction plan is entitled to unemployment benefits and, therefore, *Morillo* effectively overruled *White*. *State St.*, *supra* at 8. The Appeals Court stated that the key differences between *Morillo* and *White* were that there were no incentives offered to Morillo and there would be no economic impact on the employer "flowing from the precise identity of the twelve employees" who were laid off. *State St.*, *supra* at 9. The court concluded that the holding in *Morillo* "is reserved for situations in which an employer announces that layoffs are to occur and accepts volunteers without offering them any incentives. . . . [It was] highly unlikely that the [Supreme Judicial Court] would have intended in *Morillo* to overrule what was then its four-year-old decision in *White* without even mentioning the case." *Id.*

The claimant argues that, in *State St.*, the Appeals Court erred in assuming that early retirement and incentive-based termination packages should be treated the same analytically. She also argues that the key difference between *White* and *Morillo* is not that an incentive was offered, but who made the final decision, what she refers to as the "last act." We are not persuaded.

The inquiry in *White*, *Morillo*, as well as *State St.*, was whether the employees, who apparently had volunteered to leave their employment due, respectively, to an early retirement incentive, an announced layoff, or a voluntary separation package, had "good cause . . . attributable to the employ[er]." In *White*, the case was remanded to determine whether the employee reasonably believed a layoff was imminent when he accepted the retirement package. *White*, *supra* at 598-599. In *Morillo*, the court held that the actual identity of an individual employee who was part of an involuntary layoff did not matter. *Morillo*, *supra* at 766. In *State St.*, the court concluded that the employer

hindered the ability of two of its employees to make a realistic assessment about whether the announced involuntary terminations would take place if they did not accept the voluntary separation package. *State St., supra* at 11-12. Thus in all three cases, the facts were such that the leaving *could* be attributable to the employer. However, *Morillo* is distinguishable on its facts because the employer announced and carried out a twelve person layoff, whereas in *White* and *State St.,* whether leaving could be attributable to the employer was less obvious, given that the claimants received incentives and there were no layoffs.

In this case, although the claimant asserts that she was "laid off," the record shows that Verizon never mentioned a layoff,[5] and she received the incentive package. Thus the board did not err in applying the analysis of *State St.* (and *White*) to this case.

Here, the claimant does not dispute the board's findings that, at the time she applied for the voluntary termination package, she was not compelled to apply, did not believe her job was in jeopardy, and left in part for personal reasons. Based on these undisputed facts, the board did not err in concluding that the claimant did not prove by "substantial and credible evidence" that her leaving was attributable to Verizon.[6] Cf. *Uvello* v. *Director of the Div. of Employment Sec.,* 396 Mass. 812, 816-817 (1986), and cases cited (remanding case for further findings on determination whether change in employee's duties constituted good cause to terminate employment).

*Conclusion.* For the reasons set forth above, we affirm the District Court judge's decision affirming the board's denying the claimant unemployment benefits pursuant to G. L. c. 151A, § 25 (*e*) (1).

*So ordered.*

---

[5]The single reference to a layoff occurred at the hearing. However, it was posed as a hypothetical by the review examiner to the Verizon representative.

[6]The claimant also discusses the economic impact of voluntary separation packages on employers. Because of our conclusion, we need not address her arguments, except to note that they were not raised below.