MASSACHUSETTS GENERAL HOSPI-
TAL, Plaintiff, Appellant,

v.

Stephen M. WEINER et al.,
Defendants, Appellees.

No. 77–1191.

United States Court of Appeals,
First Circuit.

Jan. 25, 1978.

H. Scott Haskell, Boston, Mass., with whom Albert G. Tierney, Jr., and Tierney, St. Onge & Manoil, Boston, Mass., were on brief, for plaintiff, appellant.

S. Stephen Rosenfeld, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for Stephen M. Weiner, et al., defendants, appellees.

William A. Brown, Asst. U. S. Atty., Chief, Civ. Div., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., and

Nancy S. Nemon, Deputy Regional Atty., Dept. of Health, Education and Welfare, Boston, Mass., were on brief, for Joseph A. Califano, Jr.

Before: COFFIN, Chief Judge, CAMP-BELL, Circuit Judge, CRARY, District Judge.*

CRARY, District Judge.

This appeal is from an order of the District Court granting the appellees' motion for summary judgment in an action filed by the Massachusetts General Hospital (MGH) in July, 1975, seeking declaratory and injunctive relief from Medicaid rate regulations promulgated by the Massachusetts Rate Setting Commission (the Commission) and approved by the Secretary of Health, Education and Welfare (the Secretary), pursuant to Title XIX of the Social Security Act, 42 U.S.C. § 1396a(a)(13)(D).

At issue is (1) whether a plan of prospective reimbursement ("the Plan") for paying the cost of inpatient hospital services provided to Massachusetts Medicaid patients, developed by the State of Massachusetts and approved by the Secretary, meets the "reasonable cost" requirement of 42 U.S.C. § 1396a(a)(13)(D), and implementing Federal regulation at 45 C.F.R. 250.30, (2) whether the prospective reimbursement plan conforms to various procedural requirements of the State law of Massachusetts, and (3) whether the prospective reimbursement plan protects the appellant's constitutional rights under Article I, Section 10, Clause 1, of the United States Constitution, and its rights of equal protection and due process of law under the 14th Amendment to the Constitution.

Appellant and State appellees filed cross motions for summary judgment and, on February 4, 1977, the District Court, in a well-reasoned order, granted the State ap-pellees' motion on the grounds there was no genuine issue of material fact and all issues of law were decided in favor of the State defendants, appellees herein.

The prospective rate system proposed by Massachusetts and approved by the Secretary, and subsequently included in its Title XIX State Plan, provides for all inpatient hospital care for Medicaid patients to be reimbursed by an all-inclusive per diem payment. State regulations 74–1, 74–26 and 14 C.H.S.R. 3, set forth the formula by which rates of reimbursement for hospitals participating in the Medicaid program were to be calculated. Under this formula the Medicaid rate, which was prospective in nature for a hospital, was established by dividing its base year[1] costs for *all* inpatients by its allowed number of the base year inpatient days. An inflation factor, compounded over two years, is added to arrive at the hospital's Medicaid rate. The State Plan was approved by the Secretary, through his designee, the Regional Commissioner of the Social and Rehabilitation Service, on December 11, 1973.

The current rate set for the MGH at the time of the appeal was $265.95 per day for each Medicaid inpatient.

The reimbursement formulas for fiscal years ending September 30, 1974, 1975 and 1976, were the same in all respects pertinent to this case. They create a system of prospective rate making designed to reimburse each hospital on the basis of "reasonable costs" incurred in treating Medicaid inpatients and to encourage efficiency and economy.

■ It is appellant's position that the State formula does not provide that a hospital will be reimbursed its actual costs, which, it asserts, is required by Federal statute,[2] and that the Commission violated

---

* Of the Central District of California, sitting by designation.

1. State regulations call for a reimbursement formula using as a rate base the actual historical cost of a hospital for a particular past year called a base year, being the twelve-month period two years prior to the rate year, which is the fiscal year covered by the regulation then in "operation."

2. P.L. 92–603, Section 232, Volume 3, U.S. Code, Cong. & Admin. News, 92nd Congress, 2nd session (1972), p. 5087, 42 U.S.C. § 1396, et seq.

State laws [3] by setting rates for the appellant in specific amounts under a prospective rate system without affording it prior opportunity to be heard.

The Medicaid services rendered in medical facilities must be medically necessary and consistent with professionally recognized standards of care. 42 U.S.C. § 1320c–4(a)(1).

In order for the State to participate in Medicaid under the program authorized, Title XIX of the Social Security Act, 42 U.S.C. 1396, et seq., and 45 C.F.R. 250.30a, it must submit a plan to the Secretary of Health, Education and Welfare, detailing how it will fulfill the Federal conditions set forth in the Act and regulations thereunder. If the Secretary determines the conditions are met, he approves the plan, which he did in the case at bench. When implementing Section 232 of P.L. 92–603, the Secretary removed from 45 C.F.R. 250.30 the reference to the Secretary's approval being "on a demonstration or experimental basis."

When the Medicaid Act was enacted in 1965, the Secretary, and, in turn, the Courts, interpreted the Act to require the states to reimburse the hospital in the same manner as the allowable cost method was developed under the Medicare Act, to wit, the "costs actually incurred" by the hospital provider.

Section 1396a(a)(13)(D) of Title 42 U.S.C.,[4] as amended in 1972 by Sections 221 and 232 of Public Law 92–603, provides that state plans for reimbursement for Medicaid patients must provide for "reasonable costs" for such services, provided that such plans do not produce reimbursement in excess of that which would result in the application of Title XVIII (Medicare) standards and principles of cost reimbursement.

The implementing Federal regulation, 45 C.F.R. 250.30(a), adopted in August, 1974, makes it clear that states, in their plans for reasonable costs, may adopt Title XVIII (Medicare) standards and principles, or alternative reimbursement plans that meet the criteria set out in the regulations which concern cost reporting. However, after December 31, 1973, payments to hospitals for Medicaid inpatient services shall be based on the lesser of the reasonable cost of services or the customary charges to the general public or, when applicable, in accordance with Title XVIII regulations. 45 C.F.R. 250.30(a)(2)(i)–(iii).

Appellants' principal objection to the State Plan is that it is based initially on the average cost per day of all inpatients in a given hospital rather than on the average daily cost of Medicaid inpatients per day, and that this method deprives appellant of its "reasonable costs" since it experienced substantially higher average daily costs for Medicaid inpatients than for non-Medicaid inpatients. It was agreed that there were other hospitals in the State whose costs for Medicaid inpatients averaged substantially less under the Plan than for non-Medicaid inpatients.

As observed by the district court, the legal issue is not whether the complex Plan is perfect, but whether under the Federal system of reimbursement, which has among its objectives the valid goal of providing incentives for efficiency and economy, the Plan can be said to provide for "payment of the reasonable cost of inpatient hospital services." The answer lies not in an assessment of policy, for that is the function of the state and Federal agencies, but in an analysis of the record presented to these

---

3. Mass. G.L. c. 6A §§ 32, 36, and Mass. G.L. c. 30A, §§ 1, 2.

4. The Section provides, in relevant part: "(a) A State plan for medical assistance must— * * * (13) provide—(D) for payment of the reasonable cost of inpatient hospital services provided under the plan, as determined in accordance with methods and standards, consistent with section 1320a–1 of this title, which shall be developed by the State and reviewed and approved by the Secretary and (after notice of approval by the Secretary) included in the plan, except that the reasonable cost of any such services as determined under such methods and standards shall not exceed the amount which would be determined under section 1395x(v) of this title as the reasonable cost of such services for purposes of subchapter XVIII of this chapter."

agencies in light of the statutory and constitutional requirements. We conclude, as did the district court, that neither the language of the statute and regulations nor the evidence presented below supports appellant's contention in this case.

The hospital contends that Congress intended "reasonable costs" of inpatient hospital services under Medicaid to mean full payment of the actual cost thereof. If Congress had intended "reasonable costs" to be synonymous with "actual costs", however, there would have been no reason for the amendments as promulgated by Public Law 92–603, 42 U.S.C. § 1396a(a)(13)(D), to provide for the "reasonable cost" program.

That the strict construction of the language is warranted can be readily concluded by reference to decisions interpreting the previous regulation. In *Catholic Medical Center of Brooklyn and Queens, Inc. v. Rockefeller*, 305 F.Supp. 1256 (E.D.N.Y. 1969) and *Connecticut State Department of Public Welfare v. Department of Health, Education and Welfare*, 448 F.2d 209 (2d Cir. 1971), the Federal courts involved turned aside the states' attempts to adopt a Medicaid reimbursement system different from Medicare. In reaching their decisions the courts there relied on the HEW's regulations requiring actual cost reimbursement and the arguments of HEW opposing the positions of the states. However, HEW has since changed its regulations to permit what was then prohibited. 45 C.F.R. 250.-30(a) and (b). In the case at bench HEW is aligned with Massachusetts, having approved its plan. The Court in *Massachusetts General Hospital v. Sargent*, 397 F.Supp. 1056 (D.Mass.1975), relied on the New York and Connecticut cases, supra, stating as to the effect of the regulations cited:

"The Secretary's regulations have the force of federal law upon the States. *King v. Smith*, 392 U.S. 309, 317, 88 S.Ct. 2128, 20 L.Ed.2d 1118."

*Id.* at 1061.

The Supreme Court, in *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 371–73, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973), comments, with respect to a regulation of the Federal Reserve Board, on the question of whether a measure chosen by an agency is reasonably related to its objectives, observing:

"That some other remedial provision might be preferable is irrelevant. We have consistently held that where reasonable minds may differ as to which of several remedial measures should be chosen, courts should defer to the informed experience and judgment of the agency to whom Congress delegated appropriate authority." *Id.* at 371–72, 93 S.Ct. at 1662.

Concerning the vesting of broad rule making power in an administrative agency, the Court states:

"In *American Trucking Assns. v. United States* [411 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337], *supra*, we noted that it was not

'a reasonable canon of interpretation that the draftsmen of acts delegating agency powers, as a practical and realistic matter, can or do include specific consideration of every evil sought to be corrected . . .. [N]o great acquaintance with practical affairs is required to know that such prescience, either in fact or in the minds of Congress, does not exist. Its very absence, moreover, is precisely one of the reasons why regulatory agencies such as the Commission are created, for it is the fond hope of their authors that they bring to their work the expert's familiarity with industry conditions which members of the delegating legislatures cannot be expected to possess.' 344 U.S. 309–310 (citations omitted)."
411 U.S. 372–73, 93 S.Ct. 1662.

The district court was well within bounds in determining that based on the evidence before HEW in 1973, the agency was not acting arbitrarily or capriciously when it approved as reasonable a reimbursement plan that treated the average cost of a Medicaid patient as if it were equal to the average cost of all patients. The evidence presented to the court established that

HEW had carefully considered the question and concluded on substantial grounds that it lacked a sufficient basis for assuming the contrary. Nothing before the court indicated that adequate data to require a revision of the equation of the average Medicaid patient and the average patient was subsequently presented in an appropriate manner to the Rate Setting Commission.

## Constitutional Claims

### (a) Due Process

■ Appellant contends that the Commission deprived it of due process of law by setting the prospective rate in a specific amount without affording it a prior opportunity to be heard. While it appears that under Massachusetts law a public hearing may not be required before an individual rate is set, see Beth Israel Hospital v. Rate Setting Commission, Div. of Hearing Officers Appeal No. HD–74–26–H–302, ample opportunity exists under Massachusetts law to challenge both the propriety of the reimbursement formula and its application to appellant, satisfying the due process requirement. M.G.L. c. 6A, § 32 provides that the Massachusetts Rate Setting Commission "shall determine, after public hearing, at least as often as annually, the rates to be paid by each governmental unit to providers of health care service . . . ." Each rate set by the Commission is deemed a regulation and is reviewable under the procedures and standards of the Massachusetts Administrative Procedure Act, id.

A first appeal of an interim or final rate is to the Division of Hearings Officers, see M.G.L. c. 6A, § 36. Proceedings before that body are adjudicatory, id., and are governed by the state Administrative Procedure Act. Each decision rendered must contain a determination of fact and law as well as a statement of reasons, M.G.L. c. 6A, § 36. Any party aggrieved by the decision of the Division of Hearings Officers has a right to petition for review by the Superior Court. Id. Procedures provided by M.G.L. c. 30A, § 14 govern. A hearing is conducted by the court sitting without a jury, M.G.L. c. 30A, § 14(6), which considers the record developed before the Commission, supplemented "upon such conditions as the court deems proper." M.G.L. c. 30A, § 14(7).

Although the Superior Court is to give due weight to the expertise of the agency and the discretion conferred upon it by the Legislature, it is authorized to affirm, remand, set aside, or modify the agency decision if it "determines that the substantial rights of any party may have been prejudiced . . . ." M.G.L. c. 30A, § 14(8). Among the conditions warranting court action are that the agency decision was "unsupported by substantial evidence . . .", § 14(8)(e), "Unwarranted by facts found by the court . . .", § 14(8)(f), or "Arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.", § 14(8)(g). Review of the Superior Court decision is to the Appeals Court or the Supreme Judicial Court, which share concurrent jurisdiction. M.G.L. c. 30A, § 15.

A similar due process attack was waged against the review mechanisms provided by Massachusetts law in Haverhill Manor, Inc. v. Commissioner of Public Welfare, Mass. Adv.Sh. (1975) 1813, 330 N.E.2d 180. Plaintiff in that case, a nursing home, challenged the offset by the Commissioner of alleged overpayment from pre-1973 years against sums owing for 1973 on the ground that it had not been afforded a prior opportunity to be heard. The Supreme Judicial Court held that although the offset decision was not a regulation subject to hearing and appeal under M.G.L. c. 30A, §§ 3, 7, sufficient review was available by means of a declaratory judgment action to comport with due process. Such is the case here as well. Review is available before the Division of Hearings Officers, the Superior Court, and an appellate court.

### (b) Equal Protection

■ The equal protection test requires only, in establishing rates for different health care facilities, that the legislative classification have some "reasonable basis." It is not unconstitutional merely because the classification is not made with mathematical nicety or because in practice it re-

sults in some inequality. *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed. 491 (1970). A legislative classification must be sustained if it is rationally related to a legitimate Government interest. *United States Dept. of Agriculture v. Moreno,* 413 U.S. 528, 533, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973). The uniform treatment of urban teaching hospitals and rural hospitals is not a denial of equal protection as to appellant. Furthermore, the formula for determining prospective rates amply provides for the differences between an urban teaching hospital and a rural hospital.

### (c) *Contract Impairment*

■ Appellant asserts that its contract rights have been impaired by preventing reimbursement of reasonable cost for services rendered in violation of the United States Constitution, Article I, Section 10, Clause 1. This contention fails for lack of the establishment of any contract rights. The hospital's annual agreement with the State requires that it accept reimbursement rates which will be subsequently established by the Rate Setting Commission. M.G.L. c. 6A, § 35.

Appellant's argument throughout this proceeding has been that reimbursement in any amount less than its actual cost of treating Medicaid patients violates the statutory scheme. Case law and the legislative history of 42 U.S.C. § 1396a(a)(13)(D), refute that contention. The distinction between "actual" and "reasonable" costs was intentional on the part of the agency and reflects a policy judgment within its authority to make. There might be a case in which a hospital could demonstrate that the discrepancy between its actual costs and the level of reimbursement is so substantial that question of fact would arise to whether the effect of the regulation was to foreclose reasonable repayment and thus to be arbitrary and capricious. This was not such a case, however, for although plaintiff alleged some degree of undercompensation, as a matter of law it did not raise a sufficient question of unreasonableness to survive summary judgment.

We intend no comment on future litigation of this matter in federal court in which other evidence may show that the regulation causes a hospital to incur significant and unjustifiable losses, or that sufficient data has been developed to impeach any subsequent approval of the regulation as arbitrary and capricious. Nor should our decision prejudice other arguments addressed to other forums, such as the State Rate Setting Commission, in its yearly evaluation of the scheme, the state court, whose function it is to evaluate the state agency's compliance with state law, or HEW, in determining whether the assumptions underlying the Plan remain valid. Our conclusion here is that appellant has not carried its burden of proving that a genuine issue of material fact existed regarding the reasonableness of the regulation as it is applied to appellant.

The summary judgment of dismissal is *affirmed.*