van Gestel, J.
This matter is before the Court on the parties’ cross motions for judgment on the pleadings and on the motion of the Hancock defendants to dismiss the amended complaint (hereafter the “complaint”). In Count I, plaintiffs seek judicial review pursuant to G.L.c. 30A, §14(7) of a decision by Massachusetts Insurance Commissioner Linda Ruthardt (“Commissioner”) approving the plan (the “Plan”) of John Hancock Mutual Life Insurance Company (“JHM”) to convert from a privately held mutual insurance company to a publicly traded stock company. Plaintiffs; who are policyholders and ex-members of JHM, argue that in approving the conversion plan, the Commissioner failed to provide them with just compensation for their ownership and property rights in JHM. The plaintiffs seek to have the entire conversion plan set aside. *597 Specifically, plaintiffs allege that the Commissioner erred in her interpretation and application of G.L.c. 175, §19E, the Massachusetts mutual insurance company conversion law ("§19E”). All defendants respond that they are entitled to judgment on the pleadings because plaintiffs have failed to satisfy the G.L.c. 30A, §14(7) requirements for a Court to set aside or modify an administrative agency decision.
The complaint also includes claims against the Hancock defendants for breach of contract (Counts II through VII); breach of fiduciary duty (Count VIII); violation of G.L.c. 175, §19E (Count IX); and violation of G.L.c. 93A (Count X). The Hancock defendants have filed a motion to dismiss these counts of the complaint pursuant to Mass.R.Civ.P. Rule 12(b)(1) and (6), arguing that plaintiffs have no standing to bring them, that plaintiffs failed to exhaust their administrative remedies with regard to the issues raised, and that the complaint is moot.
For the following reasons, plaintiffs’ motion for judgment on the pleadings is DENIED and the Commissioner’s motion for judgment on the pleadings on Count I is ALLOWED. Accordingly, plaintiffs’ additional claims for relief against the Hancock defendants — based principally on the Commissioner’s approval of the demutualization Plan — are without merit. Thus, the Hancock defendants’ motion to dismiss is ALLOWED also.

THE ADMINISTRATIVE RECORD

The Massachusetts demutualization statute permits a mutual life insurance company to convert to a stock life insurance company. The law requires that the conversion plan be approved by the Commissioner of Insurance as “not prejudicial to the policyholders ... or the insuring public” and as providing “appropriate consideration” to each eligible policyholder in exchange for relinquishment of rights in the mutual companywhich is being converted. G.L.c. 175, §19E(1) and (2).
In 1998, JHM informed the Commissioner of its intent to convert from a privately held mutual insurance company, owned and controlled by its policyholders, to a publicly held corporation. Pursuant to §19E, the Commissioner authorized a working group (the “Working Group”) consisting of Division of Insurance (the “Division”) staff members and outside consultants to review all of JHM’s proposals on behalf of policyholders and the general public. The Division also retained outside legal, actuarial, accounting and financial experts to provide the Working Group with independent advice and assistance in evaluating the Plan. The actuarial firm of Tillinghast-Towers Penn reviewed the provisions regarding allocations to eligible policyholders and the maintenance of reasonable policyholder dividend expectations; the accounting firm of Pricewaterhouse Coopers LLP conducted a financial due diligence examination and monitored policyholder voting procedures and JHM’s preparations and procedures for providing notice; the investment banking firm of Wasserstein Perella & Co., Inc. reviewed the fairness of the consideration for eligible policyholders as a group; and the law firm of Stroock & Stroock & Lavan reviewed the Plan’s compliance with § 19E. The Working Group examined proposed drafts of the Plan andmaderecommendationsforimprovementstoJHM and its advisors.
On August 31, 1999, JHM management adopted the conversion Plan and, pursuant to §19E, submitted it to the Commissioner for approval. The Plan called for JHM to become a subsidiary of a holding company, providing eligible policyholders with stock, cash or policy credits in exchange for their interests in the mutual company. Those interests were the right to vote at JHM’s annual and special meetings and the right to share in the distribution of the residual value of JHM in the event of a solvent liquidation. These interests are essentially illiquid. The formula adopted by JHM for allocating consideration among its policyholders utilized the so-called “historic plus” methodology, including both fixed and variable components. The fixed component compensated policyholders for the loss of their right to vote regardless of the level of their contribution to JHM’s surplus; the variable component, which comprised the majority of the consideration, allocated additional shares to reflect each policyholder’s past and projected future contributions to the surplus.
The Commissioner appointed two attorneys as co-Presiding Officers for the public hearing mandated by §19E. Neither the Commissioner nor the Presiding Officers participated in the Working Group’s analysis of the Plan. The Commissioner instructed all members of the Working Group not to comment on or discuss the Plan with the Presiding Officers. The Commissioner then issued the required notice of public hearing, which was published nationally and mailed to millions of JHM policyholders, employees and others. The Commissioner received numerous written submissions in response to the notice.
On November 17 and 18, 1999, the Commissioner and the two appointed Presiding Officers conducted a public hearing on the Plan. Both plaintiffs submitted ■written materials; plaintiff Thomas Tierney (“Tierney”) spoke at the hearing, as did the attorney for plaintiff Doris Marah (“Marah”). The record of the hearing was left open until November 22, 1999, for additional public comment.
Section 19E requires that policyholders vote to approve a conversion plan. On December 3, 1999, following a November 30, 1999, special meeting of policyholders, JHM reported that 93.72% of the 3,425,977 votes cast by approximately 1.1 million policyholders were in favor of the Plan. *598 Section 19E also requires the Commissioner to determine that the Plan be not prejudicial to JHM’s policyholders or to the insuring public.[3] On December 9, 1999, the Commissioner issued a decision (the “Decision”) approving the Plan pursuant to the requirements of §19E. The Decision, which was based on a review of all the evidence presented to the Commissioner, including the concerns raised by policyholders, presented a detailed discussion of the Plan’s compliance with §19E. The Decision directly addressed specific policyholder concerns about the allocation of consideration.
On January 7, 2000, plaintiffs challenged the Plan, arguing that it did not adequately protect their interests as policyholders because it did not provide them with “just compensation” for their financial interests in the mutual company. Specifically, plaintiffs assert: (1) that the Plan’s use of an initial public offering (“IPO”) of stock with anti-takeover provisions significantly undervalued plaintiffs’ shares; (2) that the Commissioner erred in applying the “historic plus" formula to determine the value of policyholders’ shares; and (3) that the Commissioner exceeded her statutory powers by approving a “closed block”[4] conversion that allowed the new insurance company to operate members’ insurance contracts as “participating” rather than “nonparticipating.”
In her December 9, 1999, Decision, the Commissioner specifically addressed these concerns, finding: (1) that there was “no merit” in plaintiffs’ contention that policyholders were proprietary owners of the company; (2) that the Plan provided “each eligible policyholder with ‘appropriate consideration’ in exchange for their membership interests”; (3) that the Plan’s use of the “historic plus” formula was fair and reasonable; and (4) that the proposed operation of the Closed Block was fair and reasonable and not prejudicial to policyholders or the insuring public.
Plaintiffs argue that the decision should be remanded because the Commissioner’s approval of the Plan was based on an erroneous construction of §19E. The Commissioner has issued only one other decision applying § 19E. See State Mutual Life Assurance Co. of America, (“State Mutual”), Executive Office of Consumer Affairs, Division of Insurance, Docket No. F-95-1 (August 2, 1995).[5] The plaintiffs claim that some of the decisions made in State Mutual were erroneous, and that the Commissioner therefore erred in relying on any of those decisions in this matter.[6]

DISCUSSION

Cross Motions for Judgment on the Pleadings

Judicial review of the Commissioner’s findings is basically an appeal governed by G.L.c. 30A, §14. Claims filed in the Superior Court seeking judicial review of administrative agency proceedings must be resolved through a motion for judgment on the pleadings. See Superior Court Modified Standing Order 1-96; Mass.R.Civ.P. Rule 12(c). Such judicial review is confined to the administrative record, and the Court may modify or set aside an agency decision only if the agency has made an error that prejudices the appealing party’s substantial rights.[7]
In an appeal pursuant to G.L.c. 30A, §14, the effective appellants, here the plaintiffs, bear the burden of demonstrating a decision's invalidity. Coggin v. Massachusetts Parole Board, 42 Mass.App.Ct. 584, 587 (1997); Merisme v. Bd. of App. on Motor Veh. Liab. Policies and Bonds, 11 Mass.App.Ct. 470, 474 (1989). In reviewing the Decision here, the Court is required to give due weight to the Commissioner’s experience, technical competence, specialized knowledge and the discretionary authority conferred upon her. Flint v. Commissioner of Public Welfare, 412 Mass. 416, 420 (1992).
The Court must confine its review to the administrative record, Cherubino v. Board of Registration of Chiropractors, 403 Mass. 350, 354 (1988), and sustain the Commissioner’s Decision unless it is unsupported by substantial evidence. Solimeno v. State Racing Commission, 400 Mass. 397 (1987); Hotchkiss v. State Racing Commission, 45 Mass.App.Ct. 684, 695-696 (1998); Yazbek v. Bd. of App. on Motor Veh. Liab. Policies and Bonds, 41 Mass.App.Ct. 914, 916 (1996). In other words, to the extent the Commissioner’s ruling is one of fact, it stands if supported by substantial evidence. Dohoney v. Director of the Div. of Employment Sec 377 Mass. 333, 337 n.3 (1979); Buckley v. MCAD, 20 Mass.App.Ct. 172, 175 (1985). “Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion.” G.L.c. 30A, §1(6); see Lycurgus v. Director of the Div. of Employment Sec., 391 Mass. 623, 627-28 (1984).
The Court may not receive additional evidence, absent the special circumstances set forth in G.L.c. 30A, §14(5), which do not exist here. Nor is the judicial review a trial de novo. Southern Worc. Cty. Reg. Voc. Sch. Dist. v. Labor Relations Comm’n, 386 Mass. 414, 420 (1982). The Commissioner is the sole judge of the weight to be afforded to the evidence before her. Guarino v. Director of the Div. of Employment Sec., 393 Mass. 89, 92 (1984). It is "within the [Commissioner’s] discretion to disbelieve the [appellants’] version . . .” Yazbek, supra, 41 Mass.App.Ct. at 916.
The judge does not properly act as a fact finder . . . The [Commissioner] alone functions as the finder of facts . . . The judge’s function ... is to determine whether [she] applied correct legal principles in reaching [her] decision. Guarino, supra, 393 Mass. at 92. Thus, the decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole, taking into account whatever in the record fairly detracts from its weight. G.L.c. 30A, §14(7); *599 Cohen v. Board of Registration in Pharmacy, 350 Mass. 246, 253 (1966).
G.L.c. 30A, §14(7), however, authorizes a Court to set aside, modify or remand an administrative decision if it determines “that the substantial rights of any party may have been prejudiced because the agency decision is based on an error of law.”
Here, plaintiffs allege that because JHM’s conversion Plan inadequately compensated them for giving up their ownership rights in the mutual company, the Commissioner’s approval of the Plan exceeded her authority and constituted an unconstitutional taking of plaintiffs’ property. Plaintiffs argue that the Commissioner erred as a matter of law because the Plan’s determination of “appropriate consideration” was prejudicial to policyholders. Plaintiffs contend that they were prejudiced by the Plan’s reliance on an IPO with anti-takeover provisions and by the Plan’s utilization of the “historic plus” formula.
Since judicial review of the Commissioner’s Decision is confined to the administrative record, the Court may “not make a de novo interpretation of the facts or draw different inferences from the [Commissioner].” Vaspourakan Ltd. v. Alcoholic Beverages Control Commission, 401 Mass. 347, 351 (1987). G.L.c. 175, § 19E( 1) requires that a plan approved by the Commissioner must conform “to the requirements of this section.” Thus, the first task for this Court is to determine whether, based on the administrative record, the Plan approved by the Commissioner conformed to the requirements of §19E.
Certain subsections of the statute set forth specific procedural requirements:
that a public hearing be conducted and that proper notice of the hearing be given to the insurer, its directors, officers, employees and policyholders, all of whom shall have the right to appear and be heard (subsection 1);
that the plan be approved by a vote of not less than two-thirds of the insurer’s policyholders voting in person, by proxy or by mail at a meeting called for that purpose pursuant to such reasonable notice and procedures as may be approved by the commissioner (subsection 2);
that the plan give each eligible policyholder a preemptive right to acquire his proportionate part of all of the proposed capital stock, (subsection 4);
that shares be offered to policyholders at a price not greater than thereafter offered to others under the plan (subsection 6); and
that the plan provide for payment to each policyholder of consideration (subsection 7).
The administrative record reflects that the Plan complied with all of these statutory requirements. Review of the Commissioner’s Decision indicates that she acted in all respects in accordance with these procedural directives. The Commissioner authorized a Working Group including Division staff and outsideconsultantstoreviewJHM’sproposals, involving legal, accounting, financial and actuarial experts ; she conducted a public hearing and provided proper notice of that hearing; the Plan was approved by substantially more than two-thirds of JHM voting policyholders; policyholders had a choice of receiving cash, stock or premium discounts for their interests; stock was offered to policyholders at aprice not greater than that offered to others; and the Plan provided for payment of consideration to each policyholder.
In addition to these procedural requirements, certain subsections of the statute entrust evaluative judgments to the discretion of the Commissioner. Thus, pursuant to subsection (1), the Commissioner must determine that a proposed plan is “not prejudicial to the policyholders of such company or to the insuring public.” In addition, subsection (3) requires the Commissioner to ensure that policyholders receive “appropriate consideration” for their membership interests in the company, “determinable under a fair and reasonable formula approved by the Commissioner.” These discretionary judgments are challenged by the plaintiffs.
In reviewing the Decision, “the [C]ourt shall give due weight to the experience, technical competence, and specialized knowledge of the [Commissioner], as well as to the discretionary authority conferred upon [her].” G.L.c. 30A, §14(7). If, however, the reviewing Court determines that the Decision was based upon an error of law, the Court may refuse to support it. See Van Munching Co. v. Alcoholic Beverage Control Comm’n, 41 Mass.App.Ct. 308, 310-11 (1996), where the Court recognized its obligation to give “due weight to the [ABCC’s] experience, technical competence and specialized knowledge, as well as to the discretionary authority conferred upon it.”
In Van Munching, however, the language of the statute specifically prohibited discounts with a discriminatory purpose, so the Court found that the statute did not give the ABCC the discretion to determine whether a non-discriminatory discount was otherwise fair or reasonable. Here, in contrast, G.L.c. 175, § 19(E) gives the Commissioner veiy broad discretion in deciding whether or not a proposed demutualization plan is fair. The Commissioner is, in fact, charged with determining whether or not a proposed demutualization plan is “prejudicial” to policyholders or to the insuring public and whether the plan provides policyholders with “appropriate consideration” for their membership interests, based on “a fair and reasonable formula.” Thus, the statute specifically grants the Commissioner the discretion to evaluate the overall fairness of a proposed plan. This case, therefore, clearly is distinguishable from Van Munching, in which the Court found that the ABCC’s decision contradicted the plain language of the statute. Here, where the *600 Commissioner exercised discretion explicitly granted to her by G.L.c. 175, §19E, this Court finds no error of law.
The plaintiffs also maintain that the Commissioner abused her discretion in finding that the Plan provided them with appropriate consideration for their interests in the mutual company. First, they argue that the Commissioner’s reliance on an IPO containing anti-takeover provisions to determine the value of plaintiffs’ interests unfairly depressed the value of those interests. Second, they contend that the statute prohibited the Commissioner from relying on the “historic plus” methodology, asserting that the wording of §19E(3) required the use of the “historic only” formula. Finally, they challenge the Plan’s provisions regarding the operation of the Closed Block.

IPO with Anti-takeover Provisions

Where the use of an anti-takeover provision is specifically authorized by §19E(9), the decision to couple such a provision with an IPO falls squarely within the Commissioner’s discretion under the statute.[8] This Court must defer to the Commissioner’s interpretation of her statutory mandate, as long as the interpretation is plausible. See LeBeau v. Dept. of Employment and Training, 422 Mass. 533, 537 (1996). In reviewing the Commissioner’s Decision under G.L.c. 30A, the Court must determine whether that Decision is supported by substantial evidence — "such evidence as a reasonable mind might accept as adequate to support a conclusion." New Boston Garden Corp. v. Board of Assessors of Boston, 383 Mass. 456, 466 (1981). It makes that determination here. The amount of evidence before the Commissioner was far more than adequate to support her conclusions.

Historic Plus Allocation

Plaintiffs challenge the use of the “historic plus” method to allocate consideration to policyholders, arguing that the wording of the statute prohibits the inclusion of any criteria based on estimates of future experience. The statute states:
In exchange for all membership interests in the company, such plan shall give each policyholder appropriate consideration. Said consideration shall be determinable under a fair and reasonable formula approved by the commissioner, and shall be based upon the insurer’s entire surplus as shown by the insurer’s financial statement most recently filed with the commissioner . . . including all voluntary reserves but excluding contingently repayable funds and outstanding guaranty capital shares at the redemption value thereof, and without taking into account the value of nonadmitted assets or insurance in force.
G.L.c. 175, §19E(3).
Plaintiffs contend that this language required the Commissioner to utilize the “historic only” methodology, which bases the allocation to policyholders on a company’s surplus on a specific day before the conversion. Plaintiffs argue that because the statutory language excludes the value of "insurance in force,” the Commissioner improperly approved the use of a formula that included estimated future contributions to surplus. Plaintiffs contend that the Commissioner did not have the statutory discretion to approve just any fair and reasonable formula, but only a formula based on historic criteria.
“Where the Legislature has not imposed specific restrictions on the reasonable methods by which an agency may carry out its mandate in the plain language of the agency’s enabling statute, it is not appropriate for the courts to order the agency to follow specific methods for meeting the agency’s mandate.” Mass. Coalition for the Homeless v. Sec'y. of Health & Human Services, 422 Mass. 214, 223 (1996), quoting Williams v. Sec'y. of Executive Office of Human Servs., 414 Mass. 551, 570 (1993). A Court may not tell a person in the Commissioner’s position how to fulfill her legal obligation unless “there is but one way in which the obligation may properly be fulfilled.” Matter of McKnight, 406 Mass. 787, 792 (1990). Where the plain language of the statute does not mandate that the Commissioner utilize a particular methodology to determine appropriate consideration, the decision of which allocation formula to use was within the Commissioner’s discretion, and that discretion was properly exercised here.

Closed Block

The plaintiffs suggest that the Closed Block, as funded under the Plan, may not meet policyholders’ dividend expectations. The Commissioner found, however, that plaintiffs failed to introduce evidence to support this assertion. The Closed Block included almost all individual policies that would receive dividends after the demutualization. The premiums paid under those policies would be credited to the Closed Block, and all benefits and dividends would be paid out of the Closed Block. To the extent that these assets were insufficient to pay benefits guaranteed under the Closed Block, the Plan provided that JHM satisfy these obligations out of its general funds. Moreover, the Plan provides for the Commissioner’s ongoing monitoring of the operation of the Closed Block to ensure that policyholders’ expectations are met.
If a Court finds that an agency decision is based on sufficient evidence, the “court may not displace an administrative board’s choice between two fairly conflicting views, even though the court might justifiably have made a different choice had the matter been before it de novo." Vaspourakan. Ltd. v. ABCC, supra, 401 Mass. at 351. Here, the Commissioner had the statutory authority to determine whether the Plan provided policyholders with “appropriate consideration,” and the record reflects that her determination *601 on this point was based on substantial evidence. The Commissioner’s Working Group of Division staff and outside financial, actuarial and legal consultants reviewed JHM’s proposals for her. These experts, most of whom were independent, evaluated the very Plan provisions that are now being challenged by the plairttiffs, including the reasonableness and fairness of the allocations to policyholders and the adequacy of the Closed Block provisions. In her Decision, the Commissioner discussed the different points of view presented on these issues, and explained in some detail the reasons for her decisions, including the resultant benefits to policyholders.
Where the Commissioner had the discretionary authority to determine whether JHM’s proposed Plan provided policyholders with appropriate compensation and where that decision was supported by substantial evidence, this Court may not substitute its judgment for that of the Commissioner.
The Commissioner’s Decision was supported by substantial evidence, was warranted by the facts presented to and found by her, and was neither based on an error of law nor was it arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

The Remaining Counts of the Complaint

Whatever the outcome on Count I, the plaintiffs argue that they nevertheless are entitled to proceed to trial on the remaining counts against the Hancock defendants. These are the claims for breach of contract, breach of fiduciary duty and violation of G.L.c. 93A. This Court disagrees.
Before reaching the issues argued as to these counts, the Court pauses to discuss a procedural nuance. The Hancock defendants have moved to dismiss these counts pursuant to Mass.R.Civ.P. Rule 12(b)( 1) and (6). In considering their motion, this Court places substantial reliance upon its own determination of Count I, after its judicial review of the administrative record under G.L.c. 30A, §14(7), pürsuant to Mass.R.Civ.P. Rule 12(c). Whether that reliance, at least for Rule 12(b)(6) purposes, requires treating the Hancock defendants’ motion to dismiss as one for summary judgment under Rule 56 is not entirely clear. See, e.g., Watros v. Greater Lynn Mental Health & Retardation Association, Inc., 421 Mass. 106, 108-09 (1995). Nor, however, to this Court does it seem of much moment. Certainly, the parties here were not taken by surprise with the Hancock defendants’ contentions that the determination of Count I in the Commissioner’s and their favor would have a dismissing effect on the remaining counts. Neither at the oral arguments on November 21, 2000, nor at any time since, have the plaintiffs raised any procedural or other issues suggesting that they needed or required any additional opportunity to present material of a different nature should this Court’s actions result in the Hancock defendants’ motion to dismiss being disposed of under Rule 56 rather than Rule 12(b)(6). Consequently, this Court sees no need for any further notification of its intent to do so. See, e.g., Gomes v. Metropolitan Property & Casualty Insurance Company, 45 Mass.App.Ct. 27, 32 (1998).
The Court, therefore, turns now to the substance of the motion.
In general, it is too late to raise a claim before a reviewing Court if the point was not raised before the administrative agency. See McCormick v. Labor Relations Comm’n, 412 Mass. 164, 170 (1992); Albert v. Municipal Court, 388 Mass. 491, 493 (1983); Gordon & Son, Inc. v. Alcoholic Beverages Control Commission, 386 Mass. 64, 69 (1982). The plaintiffs do not deny a failure to present to the Commissioner claims that the Plan breached JHM’s Charter or policyholders’ contracts, that JHM’s management breached their fiduciary duties, or that management’s devising and implementing the Plan violated c. 93A.
Here, in any event, the Commissioner already has addressed essentially all of the issues raised in the additional counts. The breach of contract counts are based on plaintiffs’ allegations that (1) because the JHM Charter did not authorize a conversion from a mutual insurance company to a publicly held corporation, the Plan breached JHM’s Charter and failed to protect policyholders’ contractual ownership rights, and (2) the Closed Block arrangement failed to compensate policyholders adequately for their interests in JHM. Similarly, the claims for breach of fiduciary duty and violation of c. 93A are grounded on plaintiffs’ same charges that the conversion violated the Charter and that the “historic plus” formula and Closed Block arrangements deprived policyholders of adequate compensation for their interests in JHM. The claims in Counts II through X are really nothing more than indirect challenges to the Commissioner’s Decision.
Each of these underlying claims was considered and rejected by the Commissioner; each was discussed in some detail in her Decision; and the Commissioner's actions have now been found appropriate by this Court. Where reasonable minds differ as to the action an agency should take, the Court must defer to the informed judgment and experience of the agency. See Massachusetts General Hospital v. Weiner, 569 F.2d 1156, 1159 (1st Cir. 1978).
It is not “a reasonable canon of interpretation that the draftsmen of acts delegating agency powers, as a practical and realistic matter, can or do include specific consideration of the evil sought to be corrected.” Id. For this reason, the legislature relies on the expert’s familiarity with industry conditions. Id. Here, there is no question that the conversion statute raised significant issues of fairness that required a careful balance of competing interests. “The historical conflict in demutualization has been the *602 competing interests of the current management, or ‘insiders,’ and the interests of the policyholders.” Arthur J. Chartrand, Associate Counsel, National Association oflnsurance Commissioners, Demutualization 3(1985).
Conversion, however, is not an easy process. There is a practical and almost inherent conflict of interest between the mutual company and its management, and the rights and interests of the policyholders themselves. Balancing the interests of the company with fair and equitable treatment to all policyholders while controlling any overreaching or undue advantage by management or third parties is at the crux of the problem.

Id.

Chartrand makes it clear that, in the demutualization process, there is no consensus on how companies are to be valued or how the allocation to policyholders is to be made. He suggests, however, that “if disinterested third parties come up with a figure they think is fair, the commissioner agrees, and the policyholders by super-majority vote agree, a fair result, while not guaranteed, may be achievable.” Id.
Here, the Commissioner was assisted in her evaluation of the Plan by outside independent actuarial, accounting, financial, and legal consultants, each of high repute. Her process complied with the statutory requirements of proper notice, a public hearing, and a special vote open to all policyholders. The policyholders who voted approved the Plan by more than 93%.
Thus, because all of the arguments underlying the claims against the Hancock defendants were addressed by the Commissioner’s decision, and because the Commissioner properly acted in rejecting those arguments, the claims against the Hancock defendants may not be subject to further judicial review. See, e.g., Harhen v. Brown, 431 Mass. 838, 848 (2000) (in shareholders’ derivative action, management is entitled to the protection of business judgment rule in absence of any allegation of bad faith).
The Hancock defendants converted JHM from a privately held mutual insurance company to a publicly traded stock company. The law of Massachusetts permitted that conversion, provided that the Plan be approved by the Commissioner oflnsurance pursuant to G.L. 175, §19E. This Court has found that the Commissioner properly approved of the Plan. Further, over 93% of the voting policyholders also approved of the Plan. In connection with this Commissioner-approved conversion, it cannot then be said that the Hancock defendants breached contractual obligations or fiduciary duties,[9] violated G.L. 175, §19E, or committed unfair and deceptive acts or practices prohibited by G.L.c. 93A.

ORDER

For the foregoing reasons, it is hereby ORDERED that plaintiffs’ motion for judgment on the pleadings is DENIED and defendants’ motion for judgment on the pleadings is ALLOWED. Further, the Hancock defendants’ motion to dismiss, treated as a motion for summary judgment because of the Court’s reliance upon its own rulings on Count I, is also ALLOWED. Judgment is to enter accordingly.

On August 2, 1995, in a similar matter involving State Mutual Life Assurance Co. of America, the Commissioner determined that the requirement that the Plan not be prejudicial to policyholders applied to policyholders as a group, and that the Commissioner was “required to harmonize the competing interests of individual policyholders,” not to determine whether the plan was in the best interests of each and every policyholder, which was considered an impossible standard.

The “closed block” portion of the agreement protects the policy dividend expectations of certain policyholders from the vagaries of the market forces after the capitalization.

Tierney also testified in those proceedings on behalf of three named policyholders who were unavailable to testify.

In State Mutual, for example, the compensation to policyholders was determined by an IPO, and consideration was determined on an “historic plus” basis. That plan was not appealed, under the conditions of an August 25, 1995, Settlement Agreement, entered into by State Mutual with the Center for Insurance Research and certain policyholders.

The Court may set aside or modify an agency decision that is: in violation of constitutional provisions; in excess of statutory authority or jurisdiction of the agency; based upon an error of law; made upon unlawful procedure; unsupported by substantial evidence; unwarranted by the facts found by the agency on the record as submitted; or arbitrary and capricious, an abuse of discretion or otherwise not in accordance with law. G.L.c. 30A, §14(7).

Plaintiffs acknowledge that §19E(9) authorizes the use of an antitakeover provision in a demutualization plan, because such a provision protects shareholders by preventing a third party from acquiring the company at an artificially low price.

Count VIII also suffers from a failure to satisfy the special pleading requirements for a derivative claim under Mass.R.Civ.P. Rule 23.1.